Norene R. O'DELL, Appellant,

v.

**UNITED STATES** of America and Jack Ruhter, Trustee in Bankruptcy, Appellees.

No. 7462.

United States Court of Appeals Tenth Circuit.

Jan. 9, 1964.

**452**

Tosh Suyematsu, Cheyenne, Wyo., for appellant.

Karl Schmeidler, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and I. Henry Kutz, Attys., Dept. of Justice, Robert N. Chaffin, U. S. Atty., and Leroy V. Amen, Asst. U. S. Atty., on the brief), for appellee, United States of America.

James P. Horiskey, Cheyenne, Wyo., for appellee, Jack E. Ruhter.

Before MURRAH, Chief Judge, and HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

The appeal is from an order of the lower court, entered without resort to a plenary action, disbursing funds on deposit in the registry of the court.

The pertinent and undisputed facts are as follows: On April 4, 1962, after a reference of the case to the Referee in Bankruptcy, Jack O'Dell, d/b/a O'Dell Motor Company (hereinafter referred to as bankrupt), was adjudicated and appellee,

Ruhter, was appointed Trustee. Appellant, who is the wife of the bankrupt, was not a party to the bankruptcy proceeding as originally commenced. On July 30, 1962, the Internal Revenue Service (I. R.S.) filed a proof of claim in the bankruptcy proceeding asserting that O'Dell owed back taxes, penalties and interest in the amount of $104,613.38 and that various tax liens for such amount had been filed at different times upon all of the property and assets of the O'Dells. However, the amount of this claim, as will hereinafter be discussed, has been adjusted and reduced from time to time by agreement among the interested parties.

Thereafter, various mortgages on property owned by appellant and her husband as tenants by the entirety were foreclosed and such property was sold by the Sheriff of Laramie County, Wyoming, to satisfy the mortgages. A surplus in the amount of $15,918.94 remained in his hands after payment of the mortgages, taxes and costs, and, on August 17, 1962, at the instance of the Trustee, the District Judge entered an order directing the Sheriff to pay "into the Clerk of this Court all monies now held by him in excess of the amounts due to the mortgagees and costs of sale from said sales of the above described properties, said monies to be retained by said Clerk in the registry until further order of this Court distributing the same." This order was entered under the caption of the bankruptcy case and no appeal was taken from it and the Sheriff complied with the order.

On November 1, 1962, the Government, in behalf of I.R.S., filed a motion for an order to show cause alleging that the sum of $15,918.94 on deposit with the Clerk was not an asset of the bankrupt estate and that the other creditors of the bankrupt had no right, title or interest in the money superior to it. This motion was filed under the caption of the bankruptcy case and requested the court to issue an order to the claimants in the bankruptcy case to show cause why the money should not be paid to the I.R.S. for credit on the

tax liabilities of the O'Dells. The District Judge issued such an order to show cause and set the matter down for hearing on November 15, 1962. A certified copy of the order was mailed to counsel for all parties concerned, including counsel for appellant. The hearing was apparently continued until the matter was partially heard on January 21, 1963, and again continued because no definite amount of tax liability had yet been computed. The final hearing was held on June 20, 1963.

In the meantime, the I.R.S. had seized and was offering for sale on April 30, 1963, certain other real property owned by appellant and her husband as tenants by the entirety. As a result appellant, on April 23, 1963, and under the caption of the bankruptcy case, filed a "Motion to Impound Funds" in which she alleged: The ownership by her and her husband of the property involved as tenants by the entirety; the impending sale of such property by the I.R.S.; an amount of approximately $76,000, representing $53,000 base tax plus $23,000 interest, should be paid out of the bankruptcy assets, which were available and had been sequestered for that purpose; the monies obtained by seizure and sale of the property in question should not be applied to base tax and interest, but only to payment of penalties; a bona fide dispute between her, on the one hand, and the Trustee and the I.R.S., on the other, existed as to proper application of monies, both in the Bankruptcy Court and monies obtained by seizure and sale; the sum of $15,900 (actually $15,918.94) had already been "impounded and escrowed in the Registry of the Court pending determination of the above issue"; and any monies obtained by seizure and sales of entireties property "should likewise be impounded pending determination of the above issue." The District Judge, under the bankruptcy caption, entered an ex parte order on April 23, 1963, directing that all monies realized from the sales of the entireties property by the I.R.S., in excess of redemption purchase and cost of sales, "be impounded and deposited in escrow with the Depositary of this Court pending order of disposition." After payment of redemption and sale costs, the I.R.S. had on hand a total excess of $17,083.02, which was deposited with the Clerk in accordance with the ex parte order of April 23, 1963. Thus, the Clerk had on deposit two funds—one in amount of $15,918.94 and the other in the amount of $17,083.02 for a total of $33,001.96—which were in one way or another connected with the bankruptcy case. However, it is undisputed that all of these funds came from the sale of property owned by appellant and her husband as tenants by the entirety.

Appellant, the bankrupt, the Trustee and the Government entered into a stipulation, confirmd by order of the lower court dated May 9, 1963, in which the base tax, interest and penalties were agreed upon and aggregated $94,540.11. Also, on June 19, 1963, the parties entered into an "Agreed Statement of Facts" which was filed in the bankruptcy case under the bankruptcy caption and in which it was stated that the matter was before the court on the Government's application " * * * for an order to show cause why the funds on deposit in the registry of the Court should not be paid to the Internal Revenue Service for credit to the account of Jack O'Dell and Norene R. O'Dell, and the order of the Court dated November 1, 1962, requiring claimants in this matter to appear and show cause why the funds on deposit with the Court should not be paid to the Internal Revenue Service for credit to the tax accounts of Jack O'Dell and Norene R. O'Dell." It is apparent from the statement of each party's position that the parties intended for the court to determine the controversy with respect to the entire amount of $33,001.96 on deposit with the Clerk.

The next step in the chain of events occurred on June 20, 1963, at which time the hearing on the order to show cause was apparently concluded. At that hearing, and apparently for the first time, appellant took the position that the court below did not have summary jurisdiction

to hear and determine the issue before it, i. e., whether the money on deposit with the Clerk should be paid to the I.R.S. and applied to the tax liabilities of the O'Dells. Accordingly, she orally moved to dismiss on the ground that the court lacked summary jurisdiction in the case. Appellant also orally moved for an order of the court requiring the Trustee to pay the allowable tax claims in full from the assets of the bankrupt estate.

The court, in its order of July 3, 1963, directing the payment of the entire sum of $33,001.96 to the I.R.S., made the following findings: The sum of $15,918.94 on deposit in the bankruptcy registry of the court represented a surplus from the net proceeds from the mortgage foreclosure sales of entireties property, which was not a part of the bankrupt estate; the sum of $17,083.02 on deposit in the bankruptcy registry of the court represented a surplus from the seizure and sale of entireties property and was not a part of the bankrupt estate; the O'Dells were indebted for delinquent taxes and interest as of the date of bankruptcy in the amount of $74,370.94, exclusive of penalties and interest thereon; and while it had no power or jurisdiction to compel the I.R.S. to apply the $33,001.96 in any particular manner, the I.R.S. had agreed to apply $20,169.17 on penalties and interest and $12,832.79 on the basic tax.

Appellant's position on this appeal may be summarized as follows: (1) The court below, sitting as a Court of Bankruptcy, did not have jurisdiction in summary proceedings to dispose of the $33,001.96 on deposit in the registry of the court because such sum was derived from the sale of property owned by her and her husband as tenants by the entirety and therefore was not a part of the bankrupt estate. (2) The assets of the bankrupt estate, over which the bankruptcy court does have summary jurisdiction, should be charged with the basic tax and interest thereon as of the date of bankruptcy in the amount of $74,370.94 and the I.R.S., after being paid for tax and interest in that manner, could look to the "en-

tireties" money for penalties and interest, but through mediums of collection entirely apart from, and of no concern to, the bankruptcy court. In other words, the I.R.S. should be required to collect $74,370.94 from the assets in the bankruptcy case and could retain $20,169.17 of the "entireties" money to pay penalties and interest, but must return the balance of $33,001.06 or $12.832.79 to her free and clear of all tax liability. (3) The court should have ordered the Trustee to forthwith pay the allowable tax claims from the assets available in the bankruptcy case and thereby stop the daily interest charges from accruing on the tax liability.

The Government and the Trustee agree that the entire $33,001.96 was properly paid to the I.R.S. However, their agreement ends here. The Government argues that the lower court was not sitting as a Court of Bankruptcy, but as the District Court and that it possessed complete jurisdiction under 28 U.S.C.A. §§ 2041, 2042 and Rule 67, F.R.Civ.P., 28 U.S.C. A., to make orders with respect to withdrawal of money deposited in court. The Government points out that it had tax liens on all of the property owned by the O'Dells, which liens attached to the proceeds from the sale of such property, and therefore it was clearly entitled to the monies in question. The Government also claims that the funds ordered paid to the I.R.S. were correctly applied on the tax indebtedness of the O'Dells.

The Trustee, on the other hand, contends that the court was sitting as a Court of Bankruptcy, that it had summary jurisdiction pursuant to 11 U.S.C. A. § 104, sub. a(4), and that in any event, the I.R.S. and the appellant submitted to the jurisdiction of the Bankruptcy Court. However, the Trustee claims the court should have ordered that the entire sum of $33,001.96 be applied to the basic tax and interest, reducing the amount therefor from $74,370.94 to $41,368.98, and that the court had no authority to order him to pay the allowable tax claim as the amount thereof had not been determined

and is still being litigated before the Referee.

■ From the record, it seems clear that the lower court was sitting as the Court of Bankruptcy throughout the proceedings below. All of the pleadings were filed and the orders of the court entered in the bankruptcy case under the bankruptcy caption and the money involved was designated as on deposit in the bankruptcy registry. In addition, many of the commonly accepted characteristics of a summary proceeding in bankruptcy as distinguished from a plenary suit are present: The proceedings were initiated by motion and order to show cause rather than issuance and service of summons; the date for hearing was set by the court rather than by statute or established rule of court; and formal pleadings, such as answers to the motion and order to show cause, were not required. See 9 Am.Jur.2d, Bankruptcy, § 69, p. 114. On the whole record, it must be concluded that the case was heard and determined below in the bankruptcy court. Thus, it is necessary to consider this case in the light of the jurisdiction vested in the courts of bankruptcy.

■ The courts of bankruptcy were created and vested "with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings * * *." 11. U.S.C.A. § 11; State Finance Company v. Morrow, 10 Cir., 216 F.2d 676. But they are courts of limited jurisdiction and their power to act must be found expressly or impliedly in the provisions of the Bankruptcy Act, 11 U.S.C.A. § 1 et seq. Evarts v. Eloy Gin Corp., 9 Cir., 204 F.2d 712, cert. denied, 346 U.S. 876, 74 S.Ct. 129, 98 L.Ed. 384; Chicago Bank of Commerce v. Carter, 8 Cir., 61 F.2d 986; In re Ross Sand & Gravel, Inc., 6 Cir., 289 F.2d 311. And, it is a well settled rule of this Circuit, and other Circuits, that a court of bankruptcy is without jurisdiction to adjudicate in a summary proceeding a controversy in reference to property held adversely to the bankrupt estate, without the consent of the adverse claimant. Resort must be had to a plenary suit in such circumstances. Fitzgerald v. W. F. Sebel Co., Inc., 10 Cir., 295 F.2d 654; Inter-State National Bank of Kansas City v. Luther, 10 Cir., 221 F.2d 382, cert. dismissed, 350 U.S. 944, 76 S.Ct. 297, 100 L.Ed. 823; City and County of Denver v. Warner, 10 Cir., 169 F.2d 508; Jackson v. Sports Company of Texas, Inc., 5 Cir., 278 F.2d 716; Sahn v. Pagano, 2 Cir., 302 F.2d 629, cert. denied, 371 U.S. 819, 83 S.Ct. 34, 9 L.Ed.2d 59. Likewise, a court of bankruptcy is without jurisdiction of a controversy solely and exclusively between third parties which does not involve directly or indirectly the bankrupt or his property. Reconstruction Finance Corp. v. Riverview State Bank, 10 Cir., 217 F.2d 455; Central States Corp. v. Luther, 10 Cir., 215 F.2d 38, cert. denied, 348 U.S. 951, 75 S.Ct. 438, 99 L.Ed. 743; Evarts v. Eloy Gin Corp., supra.

■ However, these rules are subject to certain well recognized exceptions. A court of bankruptcy does have jurisdiction and power to determine a controversy between third parties concerning the ownership of property in which neither the bankrupt nor the trustee has title if it is impossible to administer completely the estate of the bankrupt without determining that controversy. Reconstruction Finance Corp. v. Riverview State Bank, supra; Central States Corp. v. Luther, supra, 215 F.2d at 45, and cases therein cited. And, the right to a plenary suit is a procedural right which may, of course, be waived. Reconstruction Finance Corp. v. Riverview State Bank, supra, 217 F.2d at 459, and cases therein cited. Thus, one who invokes the jurisdiction of the bankruptcy court by filing a claim with that court or who fails to object to the summary jurisdiction of the court at the earliest opportunity, thereby consents to such jurisdiction. Commercial Discount Company v. Rutledge, 10 Cir., 297 F.2d 370; Inter-State National Bank of Kansas City v. Luther, supra, and cases therein cited; James Talcott, Inc. v. Glavin, 3 Cir., 104 F.2d 851, 853, cert. denied, 308 U.S. 598, 60 S.Ct. 130, 84 L.Ed. 501.

456

With the foregoing principles of law applied to the facts in this case, the lower court's order must be sustained. The controversy concerning title to the funds in the registry of the court was submitted to the bankruptcy court with the consent of all of the parties. The appellant invoked the jurisdiction of the bankruptcy court by filing a motion to impound the funds and therefore consented to the summary jurisdiction of the bankruptcy court risking all of the disadvantages which may flow to her as a consequence, as well as gaining all of the benefits. Inter-State National Bank of Kansas City v. Luther, supra. In addition, her participation in the proceedings up until the final hearing on June 20 and the fact that she entered into the agreed statement of facts leave no doubt but what she consented to the summary jurisdiction of the bankruptcy court.

It is true that the controversy over the funds is between third parties, i. e., appellant and the I.R.S., and concerns the ownership of property in which neither the bankrupt nor the trustee has title. But that controversy does relate to the amount and satisfaction of tax liabilities of the bankrupt and appellant and therefore is so intertwined with the tax litigation in the bankruptcy case that the estate of the bankrupt cannot be completely administered without determining the dispute. Clearly, the decision as to whether the funds should be paid to the I.R.S. will have a substantial effect upon the tax claim in the bankruptcy case.

This brings us to the question of whether the court erred by not directing the I.R.S. to apply the funds in the manner requested by either appellant or the Trustee. In this connection, the court held that it did not have power or jurisdiction to direct the application of the money in any particular manner. This is manifestly correct. Appellant, by signing the joint income tax return with her husband, rendered herself liable for the entire amount of their tax liability, including interest and penalties. 26 U.S.C.A. § 6013; Furnish v. Commissioner of Internal Revenue, 9 Cir., 262 F.2d 727; Lustman v. Commissioner of Internal Revenue, 3 Cir., 322 F.2d 253; 8 Mertens, Law of Federal Income Taxation, § 47.10, pp. 20–22. As a general rule, a debtor voluntarily paying his debt may direct the application of his money to such items or demands as he chooses. 70 C.J.S., Payment, § 52, pp. 257–259; 40 Am.Jur., Payment, § 110, pp. 792–793. But, such is not the case where, as here, the payment is made involuntarily as in an execution or judicial sale. 70 C.J.S., Payment, § 51, pp. 256–257; 40 Am.Jur., Payment, § 139, pp. 811–812.

Lastly, the appellant urges that the Trustee should be required to forthwith pay the allowable tax claims from the assets available in the bankrupt estate. The trouble is that this matter was not ruled upon by the court below and consequently is not properly before us. Moreover, it appears that the question of when and how much of the tax liabilities the Trustee should pay is presently before the lower court. Certainly, it is premature in this case on the record before us.

The judgment is affirmed.