### In the Matter of PIONEER OIL & GAS CO., Inc., in Bankruptcy.
### No. 63–488.

United States District Court
E. D. Louisiana,
New Orleans Division.

Jan. 29, 1968.

M. Hepburn Many, New Orleans, La., trustee.

Edward M. Heller, New Orleans, La., for trustee.

James R. Mary, James R. Pertuit, New Orleans, La., for Pioneer Oil and Gas Co., Inc.

Nolan J. Edwards, Crowley, La., for F. J. Muller.

CHRISTENBERRY, District Judge.

On June 4th, 1963 Pioneer Oil & Gas Co., Inc. filed a petition praying for relief under Chapter X of the Bankruptcy Act (11 U.S.C.A. §§ 501–676).

The only plan of reorganization subsequently submitted was that submitted by the debtor. On October 16, 1963, Judge Robert A. Ainsworth, then a district judge and now a judge of the Fifth Circuit Court of Appeals, disapproved the plan submitted by the debtor and concluded that no feasible plan of reorganization could be effected. An order adjudging Pioneer Oil & Gas Co., Inc. a bankrupt was entered on that date. At the time of its adjudication as a bankrupt Pioneer Oil & Gas Co., Inc. was solely owned by James R. Mary.

The principal assets of the bankrupt corporation consisted of interests in various mineral leases in Louisiana and Mississippi.

In September of 1965 Mr. M. Hepburn Many, the Trustee of the bankrupt estate learned that Mr. Mary, purporting to act in the name of Pioneer Oil & Gas Co., Inc. had executed in favor of F. J. Muller a purported "release" of a certain oil and gas lease recorded in Vermillion Parish, Louisiana, in which the bankrupt estate had an interest. Mr. Mary at this time had no authority to so act for the bankrupt estate. Mr. Many was further informed that Mr. Muller was taking active steps toward assuming possession of this lease based on the "release" he had received from Mr. Mary and on September 8, 1965 caused a temporary restraining order to be issued restraining Mr. Muller from taking possession of the lease or in any way interfering with the operations being performed on the lease. It was also ordered that Mr. Muller show cause why a preliminary injunction should not issue, enjoining him from taking such possession. On September 15, 1965 Mr. Muller appearing through his attorney Mr. James R. Pertuit, filed an answer to the trustee's motion for a temporary restraining order and preliminary injunction and alleged the trustee had never possessed or assumed the lease and thus the trustee had failed to state a claim upon which relief could be granted. The motion for a preliminary injunction was heard by Judge Ainsworth on September 22, 1965 and on October 1, 1965 the preliminary injunction was granted. Judge Ainsworth pointed out in his reasons for granting the preliminary injunction that the lease contract was not "executory" and consequently did not require any action or exercise of an option on the part of the trustee. Judge Ainsworth further held that the lease involved became an asset of the estate upon the bankruptcy adjudication and that Mr. Mary, the former president of the bankrupt was not only not authorized to execute the so-called release of the lease to Mr. Muller but the trustee vigorously opposed it. A motion for a new trial with regard to that matter was denied on November 16, 1965.

The record now reveals that the legal maneuvers to thwart the Trustee's orderly administration of the bankrupt estate had only begun.

In September of 1965 a domestic corporation bearing the name "Pioneer Petroleum Corporation" was chartered. Its original officers were James R. Pertuit, President, Diane C. Hill, Secretary and Agent for James R. Mary, Vice President, and Yola A. Pertuit, wife of James R. Pertuit, Secretary-Treasurer. Contemporaneously with the chartering of Pioneer Petroleum Corporation, James R. Mary, purporting to act as President of Pioneer Oil & Gas Co., Inc., the bankrupt corporation, entered into an employment contract with James R. Pertuit in which there is a purported assignment to James R. Pertuit by the bankrupt corporation of forty per cent of the mineral interests which form the bankrupt estate. This employment contract specifically provides that it includes "all of those properties now or heretofore claimed by the Trustee in that certain bankruptcy of Pioneer Oil & Gas Co., Inc., Bankrupt, being No. 63–488 of the docket

of the United States District Court, Eastern District of Louisiana, New Orleans Division * * *."

By an act dated October 1, 1965, James R. Pertuit made a purported assignment to Pioneer Petroleum Corporation of the forty per cent interest which he claimed under the employment contract described above, which included mineral interests belonging to the bankrupt estate in properties located in eight parishes of Louisiana and four counties of Mississippi. By another act, also dated October 1, 1965, James R. Mary individually and James R. Mary, purporting to act as President of Pioneer Oil & Gas Co., Inc., the bankrupt corporation, made a purported sale and assignment to Pioneer Petroleum Corporation of the remaining sixty per cent of the mineral interests mentioned above.

The Trustee, having become aware of the transactions outlined above and being informed that both the employment contract and the sales and assignments of the above mentioned mineral leases were recorded in the Conveyance or Mineral Records of the appropriate parishes and counties filed a petition to "annul and void purported transfers, cancel and erase inscriptions, for a temporary restraining order and preliminary injunction." The Trustee recognized that an orderly administration of the bankrupt estate required that the subject mineral interests be sold so that the estate could be liquidated and the proceeds distributed among its creditors and that the inscriptions of the purported transfers outlined above would constitute a cloud on the Trustee's title to the assets and would discourage or prevent prospective purchasers from bidding at a Trustee's sale. This petition was filed by the Trustee on March 1, 1966, a temporary restraining order issued March 9, 1966 and an order to show cause why a preliminary injunction should not issue enjoining the individuals mentioned above from in any way selling, transferring, mortgaging or in any way encumbering any mineral interests owned or claimed by the Trustee of Pioneer Oil & Gas Co., Inc. or owned or claimed by Pioneer Oil & Gas Co., Inc. on June 5, 1963 immediately prior to its application for the Chapter X reorganization was entered.

On April 26, 1966 Edward M. Heller, Attorney for the Trustee met with James R. Pertuit, ostensibly the president of and attorney for Pioneer Petroleum Corporation, for the purpose of discussing a compromise and settlement of the litigation.

On April 27, 1966 the motion for the preliminary injunction came on for hearing and there being no objection was granted.

On May 17, 1966 there was a further meeting between Mr. Heller and Mr. Pertuit which resulted in a firm proposal for a settlement of the controversy. In essence the proposal was an offer by Pioneer Petroleum Corporation to pay $150,000.00 for a quitclaim of any right, title or interest that the Trustee had in the leases that were the subject of the preliminary injunction, and for a compromise settlement and dismissal with prejudice of that suit.

On May 20, 1966, Mr. Many, the Trustee, filed a pleading entitled, "Petition for Authority to Compromise Controversy" with Hon. E. E. Talbot, Sr., Referee in Bankruptcy.

As a result of this petition an order was signed for a call of the creditors of the bankrupt estate on June 2, 1966 for the purpose of considering the acceptance of Pioneer Petroleum Corporation's offer in compromise.

During the proceedings of the creditors' meeting on June 2, 1966, Mr. F. J. Muller, neither a debtor or creditor in the bankruptcy proceedings, nor a party to the pending litigation, offered the Trustee $200,000.00 for a quitclaim of all of the estate's right, title and interest in those mineral interests claimed by the estate. The terms of the offer were essentially the same as that received from Pioneer Petroleum Corporation for $150,-000.00. At the termination of the creditors' meeting the offer of F. J. Muller had not as yet been accepted. Pioneer Petroleum Corporation was made aware

of the higher offer and was given an opportunity to bid against Mr. Muller for the sale. Pioneer Petroleum Corporation declined this offer.

On June 13, 1966, more than six weeks after the granting of the preliminary injunction an answer to the petition for preliminary injunction was filed by James R. Pertuit purportedly as the attorney for Pioneer Petroleum Corporation, for himself and his wife Yola A. Pertuit.

On June 14, 1966, on "petition for immediate private sale without notice," the Referee authorized and directed the Trustee to accept the offer of Mr. Muller of $200,000.00 for the quitclaim of all the estate's right, title and interest in the subject mineral leases.

On that date, June 14, 1966, Mr. Many, the Trustee executed a quitclaim of the estate's interest claimed in the properties and quitclaimed the Trustee's interest in the petition to annual and void the purported transfers, cancel and erase inscriptions, for a temporary restraining order and preliminary injunction.

Simultaneously with the execution of the quitclaim by the Trustee, on the motion of the Trustee certain properties were releasd from the April 27, 1966 preliminary injunction. At the same time a new petition identical to the original one was filed seeking the same relief covering the properties released from the original petition. The purpose of this maneuver was to comply with a condition of the purchase agreement which required a severance of certain properties from the remainder of the estate insofar as the injunctions were concerned. The details of this procedure are not at issue here and have no bearing on the matter now before the Court.

On June 14, 1966 Pioneer Petroleum Corporation appearing through its purported president, James R. Pertuit, filed a motion for a release of a litigious right. That motion alleged that under the Civil Code of Louisiana, Article 2653, the quitclaim of the Trustee to F. J. Muller of the mineral interests was a transfer of a litigious right and that in accordance with that article Pioneer Petroleum Corporation was entitled to have itself released from the transfer of a litigious right by paying the purchaser, F. J. Muller, the sum of $200,000.00. The mover deposited $200,000.00 in the Registry of the Court on June 14, 1966 and F. J. Muller, individually, and M. Hepburn Many, Trustee of the Bankruptcy Estate of Pioneer Oil & Gas Co., Inc. were ordered to show cause why Pioneer Petroleum Corporation should not be released from the quitclaim of the litigious right and should not be able to redeem such rights as were transferred to Mr. Muller.

On August 2, 1966 James R. Mary moved to intervene as a defendant in the motion filed by James R. Pertuit for the release of the litigious right.

Mr. Mary's motion refers to a Quo Warranto proceeding pending in the Civil District Court for the Parish of Orleans with respect to the Pioneer Petroleum Corporation. Mary alleged that Mr. Pertuit had violated the terms of his employment contract and that Mr. Pertuit had been discharged as attorney for both Mr. Mary and the Pioneer Petroleum Corporation. Mr. Mary therefore moved that further proceedings be stayed on Mr. Pertuit's motion for release of litigious right pending a determination of the stock ownership of Pioneer Petroleum Corporation through the Quo Warranto proceeding then pending in the Court of Appeals for the Fourth Circuit, State of Louisiana.

On July 20, 1966, F. J. Muller moved the court to be made a party plaintiff in the new petition to annul and void purported transfers, etc. which was brought by Mr. Many, Trustee of Pioneer Oil and Gas Co., Inc. at the time he executed the quitclaim to Mr. Muller. This new petition to which Mr. Muller seeks to be made a party plaintiff is the one referred to earlier in this opinion that was filed at the time of the execution of the quitclaim for the purpose of severing the proceedings to distinguish those

properties which were the subject of the sale to Mr. Muller from those which were not.

On August 30, 1966, the Honorable Robert A. Ainsworth, Jr. having been appointed to the Fifth Circuit Court of Appeals, this matter was reallotted to this division.

On September 9, 1966 the motion of F. J. Muller to be made a party plaintiff in the proceedings brought by Mr. Many, the Trustee, against Pioneer Petroleum Corporation, et al. was granted.

The motion of James R. Mary to intervene as a defendant in the motion of Pioneer Petroleum Corporation for release of the litigious rights was denied.

The motion of Pioneer Petroleum Corporation for release of the litigious right from the transferee, F. J. Muller was taken under advisement and the motion for preliminary injunction with regard to the new petition to annul and void the purported transfers, etc. filed at the time of the execution of the quitclaim for the purpose of severing the proceedings with regard to the properties that were subject to the quitclaim sale, was granted.

On October 5, 1966 a motion by James R. Mary for a new trial on his motion to intervene was heard and that matter was also taken under advisement.

Action on these motions was temporarily stayed pending a decision by the Louisiana Appellate Court with regard to the Quo Warranto proceeding. The Louisiana court later remanded the Quo Warranto proceeding because of nonjoinder of an indispensable party. See State ex rel. Pertuit v. Pioneer Petroleum Corporation, 193 So.2d 286.

On August 4, 1967 Mr. James R. Mary, purporting to act as President and General Counsel of Pioneer Petroleum Corporation filed a motion to dismiss the petition of James R. Pertuit who also claimed to be the President of Pioneer Petroleum Corporation on the ground that James R. Pertuit had no authority to act for Pioneer Petroleum Corporation at the time the petition was filed.

That motion was also taken under advisement.

Therefore, now before the Court is Pioneer Petroleum Corporation's motion, filed by its purported attorney James R. Pertuit, for release of the litigious right from the transferee F. J. Muller, James R. Mary's motion for a new trial on his motion to intervene and Pioneer Petroleum Corporation's motion brought by James R. Mary purporting to act as President and General Counsel thereof, to dismiss the petition brought by James R. Pertuit. Additionally, an issue as to the jurisdiction of this Court to adjudicate the motion for release of the litigious right brought by Mr. Pertuit has been raised, and because of this Court's holding as to the jurisdictional question with regard to the motion to redeem the litigious right, the other motions are moot.

Simply stated, the jurisdictional issue is this; does this court have the jurisdiction to adjudicate the motion for redemption of a litigious right when neither the granting nor the denial of that motion can in any way affect the bankrupt estate or facilitate its administration.

██ As a general rule a bankruptcy court has no jurisdiction of a collateral dispute between third parties which does not involve the bankrupt or his property. Central States Corp. v. Luther, 215 F.2d 38, 45 (10th CCA 1954), cert. den. 348 U.S. 951, 75 S.Ct. 438, 99 L.Ed. 743; Rosehedge Corporation v. Sterett, 274 F.2d 786, 788 (9th CCA 1960).

The decision in Jackson v. Moore, 348 F.2d 437 (5th CCA 1965) is not contrary to that general rule. In the Jackson case the court exercised jurisdiction over a dispute between a real estate broker and one who had acquired property from the bankrupt estate. But because of the unusual contract between the bankrupt estate and the purchaser, the results of the litigation between the purchaser and the real estate broker had a direct effect on the amount of assets available for distribution to creditors.

Three exceptions to the general rule that a bankruptcy court has no jurisdiction over disputes between third parties have been recognized in our jurisprudence.

The first exception is where the results of the litigation between the third parties will affect the bankrupt estate. Jackson v. Moore, supra, comes within this exception.

The second exception encompasses those cases where the dispute involves a review and clarification of proceedings had before the referee. Rosehedge Corp. v. Sterett, supra. In the case at bar the proceedings, though complex, are clear. Also the motion to redeem a litigious right does not require a clarification of any acts of the referee or the court but is based on the present undisputed status of the proceedings.

The third exception involves those cases in which it is impossible to administer completely the estate of the bankrupt without determining the collateral controversy. O'Dell v. United States, 326 F.2d 451 (10th CCA 1964); Central States Corp. v. Luther, supra.

■ In the instant case the determination of a controversy between the purchaser of the assets, Mr. Muller and Pioneer Petroleum Corporation (regardless of the outcome of the Quo Warranto proceeding pending in the State Court) in no way facilitates the administration of the bankrupt estate. It not only does not facilitate the administration of the bankrupt estate but in no way affects its administration. The bankrupt estate has been paid in full for the quitclaim it sold and success or failure of the action to redeem a litigious right can neither add to nor subtract from the assets available for distribution to creditors.

Pioneer Petroleum Corporation appearing through its purported president, Pertuit, advances two separate arguments in favor of this Court's jurisdiction.

The first argument is that because the Court exercised its jurisdiction over the properties in the Trustee's suit "to annul and void purported transfers, cancel and erase inscriptions, for a temporary restraining order for a preliminary injunction," the jurisdictional question was settled.

■■ To accept that argument, however, is to extend the basic function of the bankruptcy proceeding which is to take over the assets and property that the bankrupt has at the time of the filing of the petition, to liquidate them and divide the proceeds thereof among the parties in interest. Nadler, the Law of Bankruptcy, Second Edition, Sec. 592. When the action sought to be asserted in the bankruptcy litigation in no way relates to this function of the bankruptcy proceeding the bankruptcy court is without jurisdiction to hear that action.

Pioneer Petroleum Corporation next argues that the purpose of Louisiana law with regard to redemption of litigious right is to put an end to litigation and not to encourage additional suits and therefore the redemption action should be brought in this Court rather than a state court.

■ But whatever might be the underlying policy considerations in Louisiana's provision for redeeming litigious rights, state policy considerations do not confer jurisdiction on a federal court.

"Once the sale is confirmed and an unconditional transfer executed, however, the jurisdiction of the bankruptcy court over the property is generally said to terminate and does not follow it, therefore, in order to determine claims, imposed conditions or limitations or declare a trust upon the property." Collier on Bankruptcy, Sec. 70.98(18).

There being no independent basis for jurisdiction (both Pioneer Petroleum Corporation and Muller being Louisiana citizens) and because this Court has no jurisdiction over the motion to redeem the litigious right for reasons outlined above, the motion of Pioneer Petroleum Corporation to redeem this litigious right must be and is hereby dismissed.

The motions of James R. Mary for a new trial on his motion to intervene and to dismiss the petition of James R. Pertuit because of his lack of authority to act for Pioneer Petroleum Corporation are now moot.