**DUCHARMES & COMPANY, INC., a Michigan corporation, Plaintiff-Appellant,**

v.

**STATE OF MICHIGAN and United States of America, Defendants-Appellees.**

**No. 86–CV–40558–FL.**

United States District Court, E.D. Michigan, S.D., at Flint.

May 27, 1987.

Dennis M. Haley, Flint, Mich., for plaintiff-appellant.

Mark F. Davidson, Asst. Atty. Gen., Detroit, Mich., for State of Mich.

Marlene Dayne, Asst. U.S. Atty., Flint, Mich., David H. Dickenson, Tax Div., Dept. of Justice, Washington, D.C., for U.S.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

The matter under consideration in this appeal from the Bankruptcy Court is the propriety of sustaining objections filed by the United States of America (IRS) and the State of Michigan (the State) to the Debtor's Proposed Amended Plan of Reorganization (hereafter the Plan). The relevant facts follow. On March 4, 1985, DuCharmes & Company (hereafter DuCharmes) filed a voluntary petition in bankruptcy for reorganization under Chapter 11. The United States and the State of Michigan filed proofs of claim for unpaid taxes which included unpaid trust fund taxes, that is, taxes withheld from wages of the debtor's employees. On April 15, 1986, debtor DuCharmes filed a Proposed Amended Plan of Reorganization which provided that payments made to the IRS and to the Michigan's Department of the Treasury should be allocated first to satisfy indebtedness of DuCharmes for employee withholding taxes which DuCharmes had been required to hold in trust for the United States under 26 U.S.C. § 7401, and for Michigan under MCLA § 206.351. The IRS and the State, appellees here, objected claiming that a debtor was not entitled to designate payments for application to its unpaid trust fund tax liability because such payments under a reorganization plan were involuntary. The Bankruptcy Judge granted the objections despite his opinion that *Matter of Mister Marvin's, Inc.*, 48 B.R. 279 (E.D. Mich.1984) was wrongly decided.[1]

The issue is whether payment of taxes pursuant to a confirmed plan of reorganization is "voluntary" thereby allowing the debtor to designate its payments of taxes *first* to the "trust fund" portion of taxes, or "involuntary" thus prohibiting any such designation. What is at stake should be mentioned. DuCharmes, by such designation, obviously seeks to extinguish the personal liability under § 6672 of the Internal Revenue Code of "responsible persons" in DuCharmes for unpaid trust fund taxes by requiring the IRS and the State of Michigan to apply its payments under the Chapter 11 Plan first to the trust fund portion of its tax liabilities. If the corporation fails to fulfill the plan's obligation to pay taxes leaving some taxes unpaid, the government's ability to recover trust fund taxes from "responsible persons" and outside of the debtor's estate will be impaired because

---

1. Judge Spector felt that *Mister Marvin's* would write classification out of Chapter 11.

This is consistent with the Bankruptcy Court's opinion in *In re Franklin Press, Inc.*, 52 B.R. 151 (Bankr.S.D.Fla.1985) in which the court stated: This position [of the IRS] is logically untenable because under this view, there are no circumstances where a Chapter 11 debtor-in-possession can allocate its funds pursuant to a plan, which is to be confirmed by a court. Judge Spector felt bound by *Mister Marvin's* because it was rendered by a district judge of the court of which the bankruptcy court was a part.

any payments under the plan will reduce *pro tanto* the amount for which the "responsible persons" are liable. This will leave non-trust fund taxes (for which "responsible persons" are not liable) unpaid. What the IRS and the State want, therefore, is to have the unpaid non-trust fund taxes of the debtor liquidated first. Under that circumstance, if for any reason there is any shortage in the remaining funds to liquidate the trust fund tax liability, IRS and the State can then look to the so-called "responsible persons" for payment.

■ Like the general rule applicable to payment of creditors by debtors,[2] the law is clear that a taxpayer, even a delinquent taxpayer, who makes a voluntary payment to the IRS, may designate the tax liability to which the payment should be applied. *Muntwyler v. U.S.,* 703 F.2d 1030, 1032 (7th Cir.1983); *O'Dell v. United States,* 326 F.2d 451, 456 (10th Cir.1964). As to payments that are involuntary, the IRS may allocate such payment as it sees fit. *O'Dell, supra* at 558–59; *Muntwyler, supra.* The IRS's policy is to apply "involuntary payments" first to nontrust fund taxes due. *Muntwyler, supra* at 1032.[3] Thus, the case comes down to the definition of "involuntary payment" and whether a payment under a confirmed Chapter 11 plan is involuntary.

In *Amos v. Commissioner,* 47 TC 65, 69 (1966), the Tax Court formulated the most frequently quoted definition of involuntary payment.

> An involuntary payment of federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the government is seeking to collect its delinquent taxes or file a claim therefor.

*Muntwyler* offers guidance for there the court rejected the IRS's argument that by submitting a claim for unpaid taxes to an assignee (appointed by the debtor for the benefit of creditors), it had taken administrative action sufficient to make the resulting payment involuntary.

> The distinction between a voluntary and involuntary payment in *Amos* and all the other cases is not made on the basis of the presence of administrative action but *rather the presence* of court action or administrative action resulting in an actual seizure of property or money as in a levy.

*Id.* at 1033 (emphasis added).[4] The court stated that merely filing a claim for back taxes is not an "enforced collection measure." Thus, *Muntwyler* limited judicial action or administrative action to enforced collection measures such as the actual seizure of property or money. This is, of course, consistent with the common law, *O'Dell v. United States, supra,* and has been applied in situations such as those in the instant case.

Further, in *In re A & B Heating & Air Conditioning,* 53 B.R. 54 (Bankr.M.D.Fla. 1985), a case involving a Chapter 11 plan of reorganization objected to by the IRS on the grounds that the payments were involuntary, the court stated:

> Based upon the *Muntwyler* and *Hartley* cases and the authorities cited therein this court finds that the mere filing of a claim and confirmation of a plan in the context of a Chapter 11 reorganization case does not amount to court action resulting in actual seizure of money or property. *Court involvement in the context of a Chapter 11 reorganization case is not the type which results in seizure of property or money as in a levy.* Unlike a taxpayer faced with a government instituted collection proceed-

---

2. 70 CJS, *Payment,* § 52, pp. 257–259; 60 AM. JUR.2d *Payment* § 89, pp. 67–76.

3. The IRS policy, P–5–60 reprinted in Internal Revenue Manual (CCH) 1350–15 states that "the taxpayer, of course, has no right of designation in the case of collection resulting from enforced collection measures."

4. The Court relied, in part, on the language of the above-quoted IRS policy:

> In discussing 26 U.S.C. § 6672, the section making a corporate officer liable ... the statement says: "The taxpayer, of course, has no right of designation in the case of collections resulting from enforced collections."

ing which may lead ultimately to levy upon the taxpayer's assets, a Chapter 11 debtor enjoys great latitude in how and if a plan is proposed and thus how and when the IRS will be paid. § 1129 requires only that a plan provide for payment of pre-petition taxes over a period not to exceed 6 years from the date of assessment in order that it may be confirmed. The debtor propounding a plan has a number of options with respect to treatment of a claim by the IRS and it is the freedom afforded by these options which dictates the conclusion that payments to the IRS pursuant to a confirmed Chapter 11 plan of reorganization are voluntary.

Id. at 58 (emphasis added). (*See also In re Hartley Plumbing, Inc.*, 32 B.R. 8 (Bankr. M.D.Ala.1983) (payments made to the IRS pursuant to a confirmed Chapter 11 plan were voluntary); *In re Franklin Press, Inc.*, 52 B.R. 151 (Bankr.S.D.Fla.1985)).

Moreover, in *In re Lifescape, Inc.*, 54 B.R. 526 (Bankr.D.Colo.1985), the court stated:

> The definitions set forth in *Amos* and *Muntwyler* make it apparent that resolution of the present issue hinges upon whether a Chapter 11 proceeding constitutes sufficient 'judicial action' to make payment made pursuant to the Chapter 11 plan, involuntary.
>
> . . . .
>
> [V]oluntariness is established by the latitude enjoyed by the debtor on how and when the IRS will be paid within the purview of section 1129. Further, the mere filing of a claim [by the IRS] in a Chapter 11 proceeding is clearly not the type of court action envisioned by *Amos* and *Muntwyler* since it does not approach the 'actual seizure' of money or property as in a levy.

Id. at 528–29. *See also Hineline v. Household Finance Corp.*, 57 B.R. 248 (Bankr.N.

D.Ohio 1986); *In re Energy Resources Co., Inc.*, 59 B.R. 702 (Bankr.D.Mass.1986).[5]

The appellees make several arguments. The strongest attacks the interpretation given *Muntwyler* by the cases just mentioned. Both Michigan and the IRS maintain that the cases for appellant misinterpret the following language in *Muntwyler:* "the presence of court action or administrative action resulting in an actual seizure of property or money as in a levy." They argue that that language should be interpreted as meaning that involuntary payment involves the presence of either:

1) Court action, or

2) administrative action resulting in an actual seizure of property or money as in a levy.

This argument would be more persuasive if the *Muntwyler* court had added a comma after "court action." The fact that the court became specific only when using the term "administrative action" appears to indicate that the court was presented with a case involving administrative action.

Moreover, the State relies on the language at page 1033 of *Muntwyler* which states:

> Cases holding that payments made in bankruptcy are involuntary do not support the government's position because court action is involved.[6]

However, both cases cited as support in *Muntwyler* involved judicial orders to pay money. For example, *O'Dell, supra* involved tax liens filed by the IRS on the property and assets of debtors. The State also emphasizes the reliance *Muntwyler* placed on *In re Bulk Sale of Inventory*, 6 Kan.App.2d 579, 631 P.2d 258 (1981). This case, however, involved a corporation which turned over its assets to auctioneers who sold the assets and deposited the proceeds into a state district court registry. An interpleader action was filed requesting creditors to file their claims and the court, not the debtor, then determined the amount

---

**5.** Although appellees argue that the cases cited above misquote the *Muntwyler* case and should therefore be disregarded, this ignores the fact that the reasoning in these cases can stand alone and is independently convincing.

**6.** The context of that statement makes it clear that the test of being involuntary is not whether court action is involved but where the money was in existence and subject to control of the court such as a seizure, levy or interpleader.

to which each was entitled. That is totally dissimilar from the facts here.

The appellees also rely on *Matter of Mr. Marvin's, supra,* an opinion by my learned Eastern District colleague. Even if *Mr. Marvin's* is not, as Judge Spector maintains, decided erroneously, it is distinguishable. In *Mr. Marvin's,* the distribution was not made pursuant to a confirmed plan but pursuant to an authorized settlement of litigation claims. Not only was the court more active (among other things the court appointed a trustee at the request of several creditors), but the case involved a liquidation of the debtor's assets.

Next, the IRS maintains that it is conceptually inappropriate to claim that debtors in a voluntary Chapter 11 reorganization are voluntarily paying their debts and that if anything about such payments is voluntary, it is only that the debtor has chosen to pay the debt through reorganization rather than be liquidated. Not only does this ignore the nature of Chapter 11 reorganizations,[7] but one could make the IRS argument about any payment of debts: that is, that a person pays debts to avoid enforced collection measures.[8] The IRS also maintains that because § 1129(a) requires that taxes are to be paid within six years from the date of the assessment and that this is enforceable by the Bankruptcy Court, the payment is involuntary. Although it is true that § 1129(a) sets parameters within which the debtor's plan must fit, the debtor has many options within these parameters in which to operate, (*see A & B Heating, supra*). To accept the IRS position would do away with § 1129(a) because then debtor would have no role, but the creditors would. Moreover, as stated in *In re Energy Resources, Inc., supra* at 706:

> Historically, bankruptcy has been a statutory vehicle for aid to those in financial need. Congress, through the Bankruptcy Code, has provided bankrupts with extensive protection from their creditors

and a reasonable approach to rehabilitate not only for their benefit but for that of the public as well.

Finally, the IRS maintains that the only reason for the designation is to allow the culpable corporate officer to avoid § 6672 liability to the extent that payments are made by the corporate debtor—a purpose already recognized by the Court. The IRS correctly claims this would deprive the government of some of its protection from loss of revenue. The response is that not only are these concerns premature, but that it is irrelevant who pays trust fund taxes as long as they are paid. Moreover, if the IRS was concerned about trust fund taxes remaining unpaid, it need not forego its *present* right to pursue "responsible persons."

The problem here is that there is no bankruptcy policy whatever involved or argued. Having candidly admitted on oral argument that they do not wish to proceed *now* against the "responsible parties" because there are simply too many internal governmental procedural steps to take and preliminary facts to ascertain before they seek to recover trust funds from "responsible parties," the IRS and the State of Michigan seek to make the performance of their duty easier by collecting through the bankruptcy proceeding the non-trust fund taxes leaving open their right, if need be in the future, to pursue the responsible parties. Whether this makes good sense or is a good or bad policy for the IRS or the State of Michigan is irrelevant to the decision here. What is relevant is whether such a ruling as they seek helps or hurts the debtor's estate; what will best give effect to the policies of the Bankruptcy Act. The IRS and the State have not addressed this.

The debtor likewise has taken its position in this case apparently not to benefit the debtor's estate and to enhance the debtor's ability to be rehabilitated, but rather to

---

7. For example, the bankruptcy court's role is that of confirmation rather than compulsion. The bankruptcy court merely determines if the proposed plan meets the bankruptcy code's requirements.

8. As appellant asserted at the hearing, there is always a measure of compulsion in the payment of taxes.

reduce the personal financial liability of the "persons responsible" who are most likely those who remain in control of the corporate debtor and thus can direct the formulation of the Plan. This purpose is similarly irrelevant to the bankruptcy or Chapter 11 proceeding as it means not one whit to the debtor. Hence, we have competing theories by competing parties who, *in this competition,* are unconcerned about the debtor or effectuating bankruptcy policy.

■ In the absence of an express bankruptcy policy to govern this fight and with neither party arguing in terms of benefit to the debtor, why should this not be resolved as if bankruptcy was not involved at all and thus follow the general rule? If, however, in other situations, either of the competing parties or any other interested party with standing can show why a particular position is in the best interest of the debtor or in furtherance of some bankruptcy policy, those matters should be submitted to the bankruptcy judge for consideration when confirmation is sought. If convincing, the Bankruptcy Court can and would be expected to act appropriately. If it makes no difference as to bankruptcy policy or the interest of the debtor, there is no reason to deviate from the general rule.[9] No reasons having been presented, the general rule is applied.

Therefore, for the reasons just stated the ruling of the Bankruptcy Court is hereby REVERSED, and this matter is REMANDED to the Bankruptcy Court for proceedings consistent with this Opinion.

IT IS SO ORDERED.

---

**9.** Compare the following hypotheticals.

*First:* A "responsible party" who is exposed to a $50,000 personal liability for trust fund taxes is willing to fund a reorganization plan by putting in $30,000 in cash provided the plan permits the tax payments to be first applied to trust fund taxes. Can it now be argued that there may be a Bankruptcy Act policy which may be brought into play?

*Second:* In the same situation as in the first hypothetical, the $30,000 the "responsible party" is willing to put cannot be reached by the IRS if it seeks to collect the trust fund taxes from the responsible party—can a policy argument now be made?

There are an infinite number of possibilities where bankruptcy policy and the rehabilitation of a Chapter 11 debtor may be implicated.

No such position has been put forth in the record submitted here nor argued by either party.