In re Dennis Monroe **DANLEY**, Debtor.

Dennis Monroe **DANLEY**, Plaintiff,

v.

**UNITED STATES** of America, ex rel., **INTERNAL REVENUE SERVICE**, Defendant.

Bankruptcy No. BK–89–01257–BH.
Adv. No. 93–1310.

United States Bankruptcy Court,
W.D. Oklahoma.

Feb. 15, 1995.

David J. Batton, David J. Batton & Associates, Norman, OK, for debtor, plaintiff.

Charles P. Hurley, U.S. Attys. Office, Tax Div., Washington, DC, for defendant.

### ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

RICHARD L. BOHANON, Bankruptcy Judge.

This matter is before the court on plaintiff-debtor's Motion for Summary Judgment seeking to avoid a transfer of property by the defendant. The complaint is made under sections 547 and 550 of the Bankruptcy Code.

In 1984, plaintiff entered into a loan agreement with The First National Bank & Trust Company of Norman, Oklahoma and pledged as collateral certain assets used in his business. The plaintiff's loan was guaranteed by the Small Business Administration. The Federal Deposit Insurance Corporation was subsequently appointed receiver for First National, and later assigned First National's security interest in plaintiff's assets to the SBA.

The Internal Revenue Service filed notices of federal tax liens against the plaintiff in 1987, and subsequently seized the plaintiff's assets in 1988. The IRS mailed notices to creditors stating that the plaintiff's interest in the property in question would be sold at a public auction, and in 1988 it was sold to a third party for $40,000. The check was made payable to both the plaintiff and defendant. As a result of the sale, the IRS released the tax levy on plaintiff's assets, they were delivered to the buyer, and the IRS received the proceeds of the sale. Within nine months from the date of the sale, the IRS received a claim to the sale proceeds from the SBA. Based upon the priority of the SBA's lien, the IRS then transferred the $40,000 to the SBA.

The plaintiff contends that the proceeds from the tax sale should have been applied to his tax liability, and that the IRS improperly transferred the funds to the SBA. Further, plaintiff argues that the transfer to the SBA was an avoidable transfer under section 547 of the Bankruptcy Code.

It is the IRS' position that it had the right to pay the sale proceeds to the SBA, or any other United States agency to which the plaintiff was indebted. It also states that its receipt of the tax sale proceeds was not a full satisfaction of the plaintiff's tax liability.

### THE PLAINTIFF HAS NO CAUSE OF ACTION TO AVOID THE TRANSFER

■ At the outset, it must be noted that section 547 is a statutory remedy available only to a *trustee*, not to a debtor. "Under section 547(b), it is the trustee alone who has the power to avoid preferential transfers." 4 *Collier on Bankruptcy* ¶ 547.21 (15th Ed.1994). Therefore, the plaintiff has no cause of action to avoid the transfer.

### NOTHING IMPROPER RESULTED FROM THE TRANSFER OF PROCEEDS

■ The plaintiff also argues that the IRS should have applied the proceeds from the tax levy to his tax liability; and that the IRS improperly transferred the funds to the SBA. These arguments are without merit. It is generally held that a debtor who voluntarily pays a debt may direct the application of those items as he so chooses, however, such is not the case where a payment is made involuntarily. *See O'Dell v. U.S.*, 326 F.2d 451, 456 (10th Cir.1964). This proceeding concerned a "forced sale", and the plaintiff has no right to decide how the proceeds are to be applied to his debts owing to the United States. When the tax payments are invol-

untary the IRS and not the taxpayer has the right to decide how to apply them. *Matter of Tom LeDuc Enterprises, Inc.*, 47 B.R. 900 (W.D.Mo.1984).

The case of *U.S. v. Brown*, 835 F.2d 176 (8th Cir.1987), addressed this particular issue. In *Brown*, the debtor sought to challenge the transfer of funds collected by the IRS to the local U.S. Attorney to satisfy bail forfeiture judgments. The court rejected the debtor's challenge, holding that "the United States has plenary power to transfer funds to which it is entitled from one pocket to another, or to decide which of several debts due from one individual will be satisfied with particular funds of the debtor." 835 F.2d 176, 180.

*Brown* also discussed the Internal Revenue Code provisions authorizing the IRS to release levies or to return property wrongfully levied upon:

> The Internal Revenue Code provides that persons, other than the taxpayer against whom an assessment is made, may bring an action to assert an interest in property upon which the IRS has levied. 26 U.S.C. § 7426. In addition, section 6343 of the Code authorizes the IRS to release its levy or to return voluntarily specific property or an equal amount of money, if it is determined that the property has been wrongfully levied upon. The Secretary of the Treasury has prescribed procedures for requests for return of property under section 6343. Treas.Reg. § 301.6343–1(b)(2) (1972). If such a request is made within nine months from the date of the levy, the period during which a suit under section 7426 may be filed is extended. 26 U.S.C. § 6532(c). Accordingly, it seems clear that third parties may request the return of property under section 6343.

*See also Raymond v. U.S.*, 983 F.2d 63 (6th Cir.1993).

The IRS has done nothing improper; the SBA asserted a valid claim to the proceeds. Thus, plaintiff's arguments concerning 26 U.S.C. § 6343(b) are without merit.

## THE IRS' RECEIPT OF THE SALE PROCEEDS DID NOT AMOUNT TO A FULL SATISFACTION OF PLAINTIFF'S TAX LIABILITY

Plaintiff also asserts that the $40,000 received from the sale by the IRS was in full payment of all plaintiff's tax liability. While on its face the plaintiff's assertion appears to create a material fact controversy, based upon the facts as presented to the court the plaintiff's argument fails as a matter of law.

Section 7121(a) of the Internal Revenue Code authorizes the IRS to enter into written agreements with taxpayers relating to that person's liability for a taxable period. The regulations issued under this section provide in pertinent part that:

> A closing agreement may be entered into in any case in which there appears to be an advantage in having the case permanently and conclusively closed, or if good and sufficient reasons are shown by the taxpayer for desiring a closing agreement and it is determined by the Commissioner that the United States will sustain no disadvantage through consummation of such an agreement.

26 C.F.R. § 301.7121–1(a). The regulations go on to provide that:

> all closing agreements shall be executed on forms prescribed by the Internal Revenue Service. The procedure with respect to requests for closing agreements shall be under such rules as may be prescribed by the Commissioner in accordance with the regulations under this section.

26 C.F.R. § 301.7121–1(d).

Nothing shown by the plaintiff indicates that a final compromise of plaintiff's tax liability was reached. The acceptance of the check by the IRS does not constitute an accord and satisfaction of debtor's tax liability. *Whitaker v. Commissioner of Internal Revenue*, 1994 WL 87577 (U.S. Tax Ct.1994).

Accordingly, the plaintiff's motion is denied and summary judgment will be entered in defendant's favor.