**Joseph A. IDA, et al., Plaintiffs,**

v.

**DEPARTMENT OF TREASURY, et. al., Defendants.**

**No. 99–4016SAC.**

United States District Court, D. Kansas.

July 11, 2000.

Jimmy E. Allen, Jr., Larson & Larson, P.C., Overland Park, KS, Kevin F. Mitchelson, Wheeler & Mitchelson, Chtd., Pittsburg, KS, for plaintiffs.

Melanie D. Caro, Office of United States Attorney, Kansas City, Leo T. Gensweider, Yates Center, KS, John H. Stauffer, Jr., Goodell, Stratton, Edmonds & Palmer, Topeka, KS, Thomas L. Wilson, Case, Moses, Zimmerman & Wilson, P.A., Wichita, KS, for Defendants.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This is a state quiet title action which was removed to the District Court for the District of Kansas by the defendant United States Department of Treasury on behalf of the Internal Revenue Service ("IRS"). (Dk.3). The IRS moves the court to either dismiss the plaintiffs' claims against it or to grant summary judgment in the IRS's favor. (Dk.24). Because the IRS submits facts beyond those alleged in the plaintiffs' complaint and because the plaintiffs take no position as to the procedural posture of the motion, the court will treat and decide the motion as one for summary judgment.

## I. SUMMARY JUDGMENT STANDARDS

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

More than a "disfavored procedural short-cut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). At the same time, a summary judgment motion does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences. *Windon Third Oil and Gas v. Federal Deposit Ins.,* 805 F.2d 342, 346 (10th Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

## II. STATEMENT OF UNCONTROVERTED FACTS

There are no genuine factual issues in this case. Both sides submit their own facts without confronting those submitted by the opposing side. The court considers the following to be the mutual uncontroverted facts.

1. On February 13, 1990, Mr. Lyle Kee, filed a voluntary petition under Chapter 7 of the Bankruptcy Code, Case No. 90–40292–7. On March 29, 1990, the IRS filed a Proof of Claim regarding Mr. Kee in Bankruptcy Case No. 90–40292–7. On July 27, 1990, the IRS filed an amendment to the Proof of Claim. On March 27, 1996, the IRS filed another amendment to the Proof of Claim. The last amended Proof of Claim reflects an unsecured priority claim of $192,291.99 on Mr. Kee's 1981, 1987, and 1988 income tax liabilities.

2. The IRS filed a Notice of Tax Lien on Mr. Kee's 1981 liability on February 26, 1990. This Notice was void, as it was filed in violation of the automatic stay provision of 11 U.S.C. § 362. The IRS subsequently filed on September 27, 1995 another Notice of Federal Tax Lien regarding Mr. Kee's 1981 liability. On August 7, 1992, the IRS filed a Notice of Tax Lien in Woodson County, Kansas on Mr. Kee's 1987 and 1988 tax liabilities.

3. On February 26, 1996, debtor, Mr. Kee, filed another voluntary petition under Chapter 7 of the Bankruptcy Code, Case No. 96–40414. In this case, Mr. Kee filed an adversary action to determine the dischargeability of his tax liabilities for the years 1981, 1987, and 1988.

4. On or about September 4, 1996, Mr. Kee and the IRS entered into an agreed order in the adversary action which was signed by the bankruptcy court. Paragraph 7 of the Agreed Order states: "Notice of Federal Tax liens were properly filed with the Register of Deeds in Woodson County, Kansas on August 7, 1992 with respect to the debtor's 1987 and 1988

federal income tax liabilities, and on September 27, 1995 with respect to the debtor's 1981 federal income tax liability." (Dk. 25, Declaration of Steve Ferguson, ¶ 8).

5. Paragraph 8 of the Agreed Order states, "Upon discharge of Mr. Kee's 1981, 1987, and 1988 tax liabilities, the United States shall retain the federal tax liens described above in paragraph 7, which remain viable, valid and enforceable with respect to all property and rights to property of the debtor existing on and before the date of filing Chapter 7 petition on February 26, 1996 (including property designated as 'exempt' in this chapter 7 proceeding), pursuant to 11 U.S.C. § 522(c)(2)(B)." (Dk. 25, Declaration of Steve Ferguson, ¶ 9).

6. On or about January 22, 1990, plaintiffs received a judgment in the District Court of Bourbon County, Kansas against Lyle and Eldon Kee, for actual damages in the amount of $969,230.11, punitive damages in the amount of $100,000, accrued interest in the amount of $799,686.47, post judgment interest, costs, and attorney fees. The Judgment was filed on March 5, 1990 with the Clerk of the District Court of Bourbon County, Kansas. The same Judgment was filed in Woodson County, Kansas on April 12, 1993.

7. In Case No. 90–40292–7, the trustee paid the IRS $121,847.99. The IRS applied those proceeds to Mr. Kee's 1981 tax liabilities ($140,650.86) on or about November 20, 1998.

8. The IRS admits its tax lien for the 1981 tax liability is subordinate to plaintiffs' judgment liens. The plaintiffs admit their judgment lien is subordinate to the IRS's tax liens for the 1987 and 1988 tax liabilities.

## III. SUMMARY OF THE ARGUMENTS

Plaintiffs do not dispute the priority of the 1987 and 1988 tax liens but they do contest the amount of those based on the IRS

actions in bankruptcy Case No. 90–40292–7. Specifically, they argue that the IRS improperly applied the $121,847.99 dividend to the 1981 lien which is inferior to the plaintiffs' judgment lien instead of applying it to the 1987 and 1988 tax liens, which are superior to the plaintiffs' judgment liens. Plaintiffs argue that in doing so, the IRS has, in effect, attempted to "boot strap" priority of its inferior 1981 lien over the plaintiffs' prior judgment lien. The plaintiffs ask the court to apply the bankruptcy dividend according to the priority of the liens and then determine the amount and priority of liens accordingly.

The IRS argues that plaintiffs have no standing to raise any issue regarding the application of bankruptcy proceeds to its tax liens. The IRS points out that plaintiffs concede the general rule that a taxpayer retains the discretion to apply voluntary payments to various tax liabilities but loses that discretion when payments are involuntary. Thus, when a payment is involuntary, the IRS has discretion as to the allocation of payments. The IRS also points out that plaintiffs concede the case law establishes that payments made by a taxpayer involved in a bankruptcy proceeding have been held to be involuntary. Noting that the bankruptcy court did not specify an allocation of the dividend, the IRS contends the district court here should find the IRS had the discretion to allocate the dividend.

## IV. ANALYSIS

 A taxpayer who "voluntarily" makes payments to the IRS has a right to designate the tax liability to which the payment will apply. *O'Dell v. United States*, 326 F.2d 451, 456 (10th Cir.1964). When a taxpayer makes a voluntary payment without directing the application of the funds, the IRS may decide how to apply it. *Liddon v. United States*, 448 F.2d 509, 513 (5th Cir.1971), *cert. denied*, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972). However, where the taxpayer makes a payment "involuntarily," the IRS

will decide how to apply the payment. *Muntwyler v. United States,* 703 F.2d 1030, 1032 (7th Cir.1983).

In *Amos v. Comm'r,* 47 T.C. 65, 69, 1966 WL 1102 (1966), the Tax Court defined "involuntary payment:"

 An involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor.

In the bankruptcy context, courts have held that the payment by a Chapter 7 trustee to the IRS is not a voluntary payment. *In re Vermont Fiberglass,* 88 B.R. 41, 43–44 (D.Vt.1988); *In re Schilling,* 177 B.R. 862 (Bankr.N.D.Ohio 1995); *In re Leonard,* 112 B.R. 67 (Bankr.D.Conn. 1990). Thus, the debtor, Mr. Kee, could not allocate the involuntary payment made to the IRS. In the absence of some order by the bankruptcy court, the IRS had the discretion to allocate the funds.

In deciding the merit of the plaintiffs' arguments, the court is not recognizing that the plaintiffs have standing to advance these arguments or that this case is the proper forum for raising such arguments. The plaintiffs have made no serious effort in proving either proposition to this court's satisfaction.

IT IS THEREFORE ORDERED that the Internal Revenue Service's motion to dismiss or, alternatively for summary judgment, (Dk.12) is sustained.