In the Matter of Theodore J. RICHMOND, Debtor.

Jean RICHMOND, Appellant,

v.

UNITED STATES of America et al, Appellees.

No. 71–1021.

United States Court of Appeals, Third Circuit.

Argued Dec. 16, 1971.

Decided March 1, 1972.

Reuben P. Goldstein, Jersey City, N. J., for appellant.

Bernard L. Belsky, Cole, Berman & Belsky, Paterson, N. J., for appellee Bernard L. Belsky, Receiver.

Janet R. Spragens, Asst. Atty. Gen., Dept. of Justice, Tax Div., Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Richard W. Perkins, Attys., Tax Div., Dept. of Justice, Washington, D. C., Herbert J. Stern, U. S. Atty., on the brief), for the United States.

Joseph R. Purcell, Crummy, O'Neill, DelDeo & Dolan, Newark, N. J., for appellee Donald A. Robinson, Trustee of Manufacturers Credit Corp.

Before BIGGS, VAN DUSEN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge.

This appeal questions the jurisdiction of a Referee in Bankruptcy to determine the income tax liability of a Chapter XI debtor's spouse who had filed joint returns with the debtor. The District Court has held that such jurisdiction does not exist in this case. In re Richmond, 322 F.Supp. 888 (D.N.J.1970). We affirm.

## I. THE FACTS

The debtor in this case is Theodore J. Richmond, who between 1932 and 1967 built up a complex of twenty-six corporations engaged chiefly in public bus transportation. In August 1967, a joint petition for arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 et seq., was filed by twenty of these corporations. The Chapter XI proceedings were eventually extended to the other six. In November 1967, the Securities and Exchange Commission was allowed to intervene, and in January 1968, the District Court granted the motion of the S.E.C. to dismiss the Chapter XI proceedings unless the petition was amended to bring the proceedings within the provisions of Chapter X of the Bankruptcy Act, 11 U.S.C. § 501 et seq. In re Manufacturers Credit Corporation, 278 F.Supp. 384 (D.N.J.1968). Because

"the protective provisions of Chapter X [would] better serve 'the public and private interests concerned including those of the debtor,'" we affirmed the District Court's order. Manufacturers Credit Corporation v. Securities and Exchange Commission, 395 F.2d 833, 843 (3d Cir. 1968).

In addition to the proceedings involving the debtor's corporations, the debtor also filed on September 7, 1967, a personal petition for arrangement under Chapter XI. It is in the matter of the personal Chapter XI proceeding that this appeal arises.

After we affirmed the District Court's order requiring Chapter X proceedings, nineteen of the corporations refiled under Chapter X. Seven refused. Appellee Donald A. Robinson, the Chapter X Trustee, subsequently petitioned to extend the Chapter X proceeding to the other seven corporations. The petition was opposed by the debtor's wife (appellant Jean Richmond) and daughters, who owned stock in several of the non-filing corporations.

Further controversy surrounded several savings accounts, totalling some $135,000, held in the name of Jean Richmond. Leonard I. Garth,[1] the Chapter XI Receiver for Theodore Richmond, asserted ownership to the bank accounts and other assets held by Jean Richmond, and the Referee ordered that no transfer or other disposition of the funds or assets be made until after determination of their ownership.

After negotiation among the parties, a compromise settlement was reached whereby Jean Richmond and the daughters agreed to assign their stock to the Chapter X Trustee and Jean Richmond agreed to convey $35,000 to the Chapter XI Receiver. In addition, Jean Richmond and the daughters would withdraw their opposition to the Chapter X Trustee's petition to extend the Chapter X proceedings to the seven corporations which had not refiled. The Chapter XI

---

1. Leonard I. Garth, now a United States District Judge for the District of New Jersey, has been succeeded as Chapter XI Receiver by appellee Bernard L. Belsky.

Receiver agreed to surrender any claim to the balance of the funds and assets held in the name of Jean Richmond. After notice to all creditors and a hearing, the Referee indicated his approval of the compromise on March 20, 1969.[2] The terms of the compromise have not been effected, however, because of circumstances to be discussed below.

Early in the course of the debtor's Chapter XI proceeding, the Government filed its claim for income taxes and interest for the years 1965 and 1966, for which years the debtor and his wife had filed joint returns. As finally amended on May 26, 1969, the Government's claim was in the amount of $418,869.73.

Within a few days after the above mentioned compromise had been approved by the Referee, the Government made a jeopardy assessment against Jean Richmond which had the effect of freezing the funds in the savings accounts in her name.[3] Because the funds were unavailable, Jean Richmond was unable to convey to the Chapter XI Receiver the $35,000 required by the compromise settlement.

The Government's claim was far greater than Jean Richmond's total assets. The Referee therefore adopted the following procedure: he would first determine the tax liability of the debtor, while holding in abeyance the question of ownership of the savings accounts as between Jean Richmond and the Chapter XI Receiver. The latter question would be avoided if the tax liability of the debtor were found to be less than the funds on deposit.[4]

Hearings on the tax claim began on May 15, 1969. During the course of the hearings, the Government objected to the participation therein of counsel for Jean Richmond, but the objection was overruled by the Referee. By opinion dated August 4, 1969, the Referee determined that the Government had not proved its tax claims. The Referee did, however, reject certain interest deductions taken on the joint returns which totalled approximately $140,000 for the two tax years. After further controversy related to income averaging, the Referee by order dated October 15, 1969, allowed the tax claim to the extent of $62,083.10. A careful reading of the order shows that it did not purport to apply to Jean Richmond, although the Government and Jean Richmond were the only parties appearing before the Referee with respect to the income-averaging controversy.[5] Since it was not reviewed,

2. Although no order approving the compromise was filed until October 16, 1969, the parties are in agreement that the compromise terms were approved on the earlier date.

3. The jeopardy assessment against Jean Richmond included, in addition to the $418,869.73 claimed in the Chapter XI proceeding, an additional amount representing fraud penalties and interest subsequent to the date that the Chapter XI petition was filed. These latter amounts were not includible in the proof of claim against the debtor. Bankruptcy Act § 57 (j), 11 U.S.C. § 93(j); Simonson v. Granquist, 369 U.S. 38, 82 S.Ct. 537, 7 L. Ed.2d 557 (1962); City of New York v. Saper, 336 U.S. 328, 69 S.Ct. 554, 93 L. Ed. 710 (1949); United States v. General Engineering & Mfg. Co., 342 U.S. 912, 72 S.Ct. 358, 96 L.Ed. 682 (1952), aff'g per curiam 188 F.2d 80 (8th Cir. 1951).

4. The Referee apparently assumed that Jean Richmond's tax liability would be the same as that of her husband. Under this assumption, if the savings accounts were in excess of the tax liability, Jean Richmond could satisfy the tax obligation from the funds on deposit, thereby removing the Government from the case. The Referee would avoid the question of ownership of the funds as between Jean Richmond and the Chapter XI Receiver since that question had been merged in the compromise agreement.

5. The order of October 15, 1969, stated:
"This matter having been brought before the Court by Herbert J. Stern, Acting U. S. Attorney for the District of New Jersey (Robert J. Cirafesi, Assistant United States Attorney, appearing) and by Reuben P. Goldstein, Esq., Attorney for Mrs. Jean Richmond, on a dispute concerning the proper computation of the tax claim against the debtor herein under the decision of this Court rendered August 4, 1969, and the Court having read and considered the Memorandum of Law submit-

**462**

this order became final ten days after its entry. Bankruptcy Act § 39(c), 11 U.S.C. § 67(c).

Jean Richmond through her attorney tendered $62,083.10 to the Government, which was refused. Thereupon Jean Richmond filed a motion to compel the Government to accept the tendered $62,083.10 in full settlement of its tax claim and to discharge the jeopardy assessment and thus release her assets. By order dated December 31, 1969, Jean Richmond's motion was granted, over Government arguments that the Referee had no jurisdiction to decide Jean Richmond's tax liability since she was not in bankruptcy. The order was corrected on January 8, 1970, to specify that the jeopardy assessment was to be discharged as to all assets upon which it had been made, and not merely the savings accounts. The Government filed a timely petition for review in the District Court.

By opinion filed June 19, 1970, the District Court upheld the Referee's jurisdiction to decide the tax liability of Jean Richmond, but struck down the order compelling the Government to dissolve its jeopardy assessment upon receipt of the tax found to be due. After reargument the District Court filed a supplemental opinion on August 24, 1970, reversing its earlier opinion and holding that the Referee had no jurisdiction to determine the tax liability of Jean Richmond. All orders of the Ref-

ted by both sides, and having heard oral arguments of counsel, and the Court having rendered its opinion on this question from the bench on October 2, 1969, it is on this 15th day of October, 1969,

"ORDERED AND ADJUDGED that there is due the United States of America, pursuant to this Court's opinion of August 4, 1969, an amount of $62,083.10, inclusive of interest to September 7, 1967; and it is further

"ORDERED AND ADJUDGED that the claim of the United States for taxes due from the debtor herein for the years 1965 and 1966 is hereby allowed in the total amount of $62,083.10, inclusive of interest to September 7, 1967."

eree were set aside insofar as they purported to apply to Jean Richmond or her separate property. Jean Richmond filed a timely notice of appeal to this Court. Rule 4(a), Federal Rules of Appellate Procedure. We have jurisdiction over the appeal under Sections 316 and 24(a) of the Bankruptcy Act, 11 U.S.C. §§ 716, 47(a).

## II. THE REFEREE'S JURISDICTION

█ It is undisputed here that the Referee had jurisdiction under the Bankruptcy Act, 11 U.S.C., to determine the tax liability of the Chapter XI debtor Theodore Richmond. *See* Abel v. Campbell, 334 F.2d 339 (5th Cir. 1964); Cohen v. Gross, 316 F.2d 521 (3rd Cir. 1963).[6] What is disputed is the Referee's jurisdiction to determine the tax liability of the debtor's wife Jean Richmond.

██ Since Theodore and Jean Richmond filed joint income tax returns for 1965 and 1966, their liability for the taxes owed for those years is joint and several. Internal Revenue Code (26 U.S.C.) § 6013(d)(3); Lustman v. Commissioner of Internal Revenue, 322 F.2d 253 (3rd Cir. 1963). As a consequence of this joint and several liability, the Government could proceed against either of the Richmonds or both of them to collect a deficiency for those years, without regard to their relative contributions to the total income. Furnish v. Commis-

6. Section 2(a) (2A), 11 U.S.C. § 11(a) (2A), invests "courts of bankruptcy" with jurisdiction to "[h]ear and determine . . . any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction . . . ." Under Section 38(6) of the Bankruptcy Act, 11 U.S.C. § 66 (6), Referees are given jurisdiction to "perform such of the duties as are by this title conferred on courts of bankruptcy"; *see also* Sections 1(9), 38(4), 11 U.S.C. §§ 1(9), 66(4); and General Orders 12, 48. These sections are made applicable in Chapter XI proceedings by Section 302 of the Bankruptcy Act, 11 U.S.C. § 702.

sioner of Internal Revenue, 262 F.2d 727 (9th Cir. 1958); Martin v. United States, 411 F.2d 1164 (8th Cir. 1969); *see* 8A Mertens Law of Federal Income Taxation § 47.10 (rev. 1971); *cf.* Cirillo v. Commissioner of Internal Revenue, 314 F.2d 478 (3rd Cir. 1963); Spanos v. United States, 323 F.2d 108 (4th Cir. 1963). Thus Jean Richmond's tax liability may be seen as separate and distinct from the tax liability of her husband, even though both liabilities result from filing the same joint return.

As a general rule, a bankruptcy court has no jurisdiction to decide controversies between third parties that do not involve the debtor or his property. Henrie v. Henderson, 145 F. 316 (4th Cir. 1906), cert. denied, 206 U.S. 563, 27 S. Ct. 795, 51 L.Ed. 1190 (1907); Nixon v. Michaels, 38 F.2d 420 (8th Cir. 1930); Evarts v. Eloy Gin Corp., 204 F.2d 712 (9th Cir.), cert. denied, 346 U. S. 876, 74 S.Ct. 129, 98 L.Ed. 384 (1953); *see* 8 Collier on Bankruptcy ¶ 3.02 n. 2 (14th ed. 1963). Jean Richmond's tax liability is a controversy between herself and the Government, and under the general rule stated above the Referee had no jurisdiction to decide that controversy.

Jean Richmond cites several cases that support an exception to the general rule where administration of the bankruptcy proceeding would be impossible without determining the third-party controversy. O'Dell v. United States, 326 F.2d 451 (10th Cir. 1964); In re International Power Securities Corporation, 170 F.2d 399 (3d Cir. 1948); In re Burton Coal Co., 126 F.2d 447 (7th Cir. 1942). These cases are inapplicable here, where there is no showing that the Chapter XI proceedings could not be administered without having the Referee determine Jean Richmond's tax liability.

O'Dell v. United States, *supra*, deserves more extended comment. There, as here, the Government asserted tax claims against a bankrupt husband and non-bankrupt wife who had filed joint returns. In that case property held by the husband and wife as tenants by the entirety upon which the Government had filed tax liens was sold, and the proceeds were ordered to be paid into court. It was undisputed, however, that the property was not part of the bankrupt estate.

After all the parties had agreed upon a stipulation as to the total taxes, interest, and penalties owed, and the court had confirmed the agreement, the Government began proceedings to have the escrowed funds applied to the sum owed. At that time the wife for the first time took the position that the bankruptcy court lacked jurisdiction to determine the disposition of the funds.

The Court of Appeals recognized the general rule that a bankruptcy court has no jurisdiction to decide third-party controversies, but noted the exception mentioned above:

"A court of bankruptcy does have jurisdiction and power to determine a controversy between third parties concerning the ownership of property in which neither the bankrupt nor the trustee has title if it is impossible to administer completely the estate of the bankrupt without determining that controversy." 326 F.2d at 455.

The court went on to uphold the bankruptcy court's jurisdiction to determine ownership of the impounded funds, since

"that controversy does relate to the amount and satisfaction of tax liabilities of the bankrupt and [his wife] and therefore is so intertwined with the tax litigation in the bankruptcy case that the estate of the bankrupt cannot be completely administered without determining the dispute. Clearly, the decision as to whether the funds should be paid to the I.R.S. will have a substantial effect upon the tax claim in the bankruptcy case." 326 F.2d at 456.

On this record we do not choose to follow the *O'Dell* decision insofar as it affords the bankruptcy court jurisdiction to determine a third-party dispute where

the only connection between the dispute and the bankruptcy proceeding is that the outcome of the third-party controversy will in some way affect the liability of the bankrupt or debtor. Obviously the extent to which a debt is satisfied by a co-debtor of the bankrupt will affect the extent to which the bankrupt estate will be called upon to satisfy the debt, but this is not sufficient reason to give the bankruptcy court jurisdiction to determine the co-debtor's liability. *See* Section 16 of the Bankruptcy Act, 11 U.S.C. § 34.

We take note of the particular facts in the *O'Dell* case that caused the court there to find that "the estate of the bankrupt cannot be completely administered without determining the dispute." The sole question there was the disposition of certain funds that had been ordered impounded by the bankruptcy court, and the court was careful to couch its opinion in terms of controversies "concerning the ownership of property."[7] Moreover, the bankruptcy court in *O'Dell* was not called upon to decide the tax liability of the non-bankrupt wife since the parties had fixed that liability by stipulation.

Nor did the Referee here gain jurisdiction over the controversy by virtue of the fact that the Chapter XI Receiver claimed ownership of the same assets that the Government's jeopardy assessment had "frozen." Since Jean Richmond's separate assets were not in the possession of the bankruptcy court and her claim to ownership was more than merely colorable,[8] the Referee had no jurisdiction to determine ownership except with the consent of Jean Richmond. Cline v. Kaplan, 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97 (1944); *see* In re Plymouth Dyeing Co., 323 F.2d 134 (3d Cir. 1963), petition for cert. dismissed, 375 U.S. 998, 84 S.Ct. 635, 11 L.Ed.2d 480 (1964); In re Consolidated Container Carriers, Inc., 385 F.2d 362 (3d Cir. 1967); 2 Collier on Bankruptcy ¶¶ 23.04[2], 23.06[4] (14th ed. 1961); *cf.* Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966).

■ Even if Jean Richmond here consented to the Referee's determination of ownership as between herself and the Chapter XI Receiver, her consent does not bind the Government, which, insofar as it might seek to satisfy its tax assessment out of the assets, is also an adverse claimant to ownership of the property. *See* Henkin v. United States, 229 F.2d 895 (2d Cir. 1956).

■ We also reject the argument that Section 2(a) (6) of the Bankruptcy Act, 11 U.S.C. § 11(a) (6), gives the Referee jurisdiction to determine Jean Richmond's tax liability. That section gives the Referee jurisdiction to

"[b]ring in and substitute additional persons or parties in proceedings under this title when necessary for the complete determination of a matter in controversy."

It was necessary here to determine Jean Richmond's tax liability, it is argued, because the Government's jeopardy assessment prevented effectuation of the terms of the compromise, upon which

---

7. Compare, however, Goldenberg v. Westover, 150 F.2d 388 (9th Cir. 1945), where the Court of Appeals held that the Referee had no jurisdiction to determine the tax liability of a creditor of the bankrupt. In that case the trustee had sought such a determination to clarify whether the creditor or the Government, which had filed tax liens against the creditor's property, should receive a dividend due the creditor from the bankrupt estate. The court noted:

"[T]he referee digressed from the administration of the bankrupt estate to settle a collateral dispute between the taxpayer and the Collector—a dispute in which the estate had no interest. The judge who reviewed the referee's order held, and we agree, that the digression was unwarranted." 150 F.2d at 390.

8. Although there was no express finding that Jean Richmond's claim to ownership was bona fide and more than merely colorable, such a finding is implicit in the Referee's order approving the compromise.

termination of the Chapter XI proceeding depended.

This argument fails. We have been directed to no cases holding that the Referee's power under Section 2(a) (6) to "[b]ring in and substitute additional persons or parties" in any way expands the Referee's subject-matter jurisdiction. Since Jean Richmond's tax liability was not within the Referee's jurisdiction, the Referee did not gain jurisdiction over that controversy by virtue of Section 2(a) (6).[9] To accept this construction of Section 2(a) (6) would be to ignore the settled principle that the Referee has no jurisdiction to determine ownership of property held by an adverse claimant with more than a colorable claim to ownership. In such a case determination of ownership is clearly "necessary for the complete determination of a matter in controversy," but the Referee cannot for that reason assert jurisdiction over the controversy by virtue of Section 2(a) (6). *See* Cline v. Kaplan, *supra*; In re Plymouth Dyeing Co., *supra*; In re Consolidated Container Carriers, Inc., *supra*.

A final argument is that the doctrines of res judicata and collateral estoppel bind the Government to the Referee's determination. Even if these doctrines might be used by Jean Richmond against the Government in subsequent litigation,[10] this is not such a collateral proceeding. The fact that his findings may be held binding in subsequent proceedings through application of res judicata or collateral estoppel does not give the Referee jurisdiction to anticipate those subsequent proceedings.

The order of the District Court will be affirmed.

9. *See* In re New York & Worcester Express, Inc., 294 F.Supp. 1163, 1165 (S.D. N.Y.1968), where the court held that the bankruptcy court had no jurisdiction to enjoin a labor grievance hearing involving third parties even though "the grievance hearing and a possible award for the Union would have a 'chilling effect' on the arrangement plan."

10. See 1B Moore's Federal Practice ¶ 0.422 (2d ed. 1965).