717 F.2d 1264
 In the Matter of FEDERAL SHOPPING WAY, INC., a Washington
corporation, Bankrupt.
Thomas L. McQUAID, Trustee in Bankruptcy, Plaintiff,
and
Andrew C. Cratsenberg, et al., Plaintiffs in Intervention/Appellees,
v.
OWNERS OF NW 20 REAL ESTATE, et al., Defendants/Appellants.
 No. 83-3537.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 9, 1983.
Decided Sept. 15, 1983.
 
 John Roberts, Skeel, Henke, Evenson & Roberts, Seattle, Wash., for plaintiffs in intervention/appellees.
 James B. Street, Schweppe, Doolittle, Krug, Tausend & Beezer, P.S., Seattle, Wash., for defendants/appellants.
 Appeal from the United States District Court for the Western District of Washington.
 Before KILKENNY and FLETCHER, Circuit Judges, and TAYLOR,* District Judge.
 FLETCHER, Circuit Judge:
 
 
 1
 Appellants challenge the judgment of the district court affirming the bankruptcy court's order permanently enjoining them from maintaining in any court any cause of action based on a claim of title to certain real property. The bankruptcy trustee had previously sold and conveyed the real property to certain purchasers pursuant to an order of the bankruptcy court authorizing the trustee to sell the property "free and clear of all liens and encumbrances." Although the court was aware of the appellants' claims of title to the property, it did not take steps to quiet title in the trustee prior to the sale. We have jurisdiction under 28 U.S.C. Sec. 1291 (1976) and reverse on the ground that the bankruptcy court had no jurisdiction under 28 U.S.C. Sec. 2283 (1976) to enjoin the state court proceedings.
 
 
 2
 * BACKGROUND
 
 
 3
 In the early 1960's, over a thousand persons entered into earnest money agreements and real estate contracts with Federal Shopping Way, Inc. (Federal Way), for the conveyance to them of undivided fractional interests in certain real property located in King County, Washington (the NW 20 property). The NW 20 purchasers made substantial payments to Federal Way pursuant to the contracts, but Federal Way never delivered deeds to them and the real estate contracts were not recorded.
 
 
 4
 On November 13, 1967, Federal Way entered reorganization proceedings under Chapter X of the Bankruptcy Act pursuant to an involuntary petition.[1] In the course of these proceedings, the NW 20 property came into the possession of the bankruptcy trustee. Most but not all of the NW 20 purchasers filed claims against Federal Way, apparently asserting contingent claims for damages arising from breach of the real estate contracts in the event the purchasers were determined not to have title to the NW 20 property.
 
 
 5
 On November 6, 1970, the district court entered an order prescribing a procedure for the allowance and disallowance of claims against the debtor. Pursuant to the terms of that order, on March 31, 1971, the trustee filed a petition requesting a court order allowing and disallowing certain claims. With regard to those claims arising from the NW 20 real estate contracts, the trustee requested that the court either (1) enter an order that the contracts "did not create any interest, present or future, in the real property subject thereto" and allow the claims of the purchasers as unsecured claims against the estate for sums invested in the bankrupt; or (2) disallow the claims of the purchasers if the court found that the contract holders had "a present or future interest in the real property subject thereto."[2]
 
 
 6
 The district court never entered the order requested by the trustee. Rather, immediately prior to the conversion of the proceedings from reorganization into bankruptcy in 1972, the court instructed the trustee "to take such procedural steps as may be necessary to have any claims of the ownership of the ... real estate adjudicated in the present Chapter X or any succeeding Chapter VII proceeding."
 
 
 7
 On May 3, 1972, the reorganization proceedings were terminated and Federal Way was adjudged a bankrupt. In the process of liquidating the estate, the trustee applied to the bankruptcy court for permission to sell certain property in the possession of the trustee. On April 18, 1975, the court issued an order authorizing sales of three separate parcels of real property.
 
 
 8
 The first section of the order quieted legal title to one parcel of property in the trustee free and clear of any right, title or interest of the persons named as defendants in the order. The order further authorized the trustee to sell that property free and clear of all liens and encumbrances and ordered any liens and encumbrances to be transferred to the proceeds of the sale.
 
 
 9
 The second section of the order similarly quieted title to another parcel of property against named defendants and in the trustee and authorized sale free and clear of liens.
 
 
 10
 The third section of the order, which pertained to the NW 20 property, like the other two sections, authorized the trustee to sell the property "free and clear of all liens and encumbrances" and ordered the liens transferred to the sale proceeds. The order, however, did not quiet title to the property in the trustee and against the NW 20 claimants. Rather, the order conditioned the trustee's authority to sell the NW 20 property on the trustee's first obtaining either "a final adjudication that all ownership rights in said property are vested in the trustee" or "consent" of all parties having an "ownership right" in the property. The court explicitly directed the trustee "to commence an adversary proceeding ... for the purpose of bringing before the bankruptcy court ... all parties having or claiming to have an ownership interest in the property ... for the purpose of obtaining a final adjudication as to the ownership rights of all parties, including that of the trustee, in and to the property ...."[3]
 
 
 11
 Despite the explicit directions of the bankruptcy court in its 1975 order, the trustee never instituted proceedings to determine title to the NW 20 property. Three years later, however, in order to permit the trustee to convey the NW 20 property pursuant to the terms of a soon-to-expire earnest money agreement, the bankruptcy court amended its 1975 order to give the trustee the choice of litigating title before sale or consummating sale without litigating title. The order of amendment of March 29, 1978, stated:
 
 
 12
 Without regard to the status of any legal proceedings relating to the status of title of sale no. 3 property, the Trustee is authorized to consummate such sale under the terms of this order at any time the purchaser is willing to accept such title as the trustee is able to convey.
 
 
 13
 A finding entered by the bankruptcy court in support of the amendment further indicates that the purpose of the amendment was to enable the trustee to sell the NW 20 property without quieting title as between the bankrupt and the NW 20 purchasers.[4] Moreover, in response to an assertion by one NW 20 purchaser that, under applicable law, the NW 20 contract purchasers owned the property, the bankruptcy court stated unequivocally that the amendment order was not a determination of title to the property:
 
 
 14
 Whether or not [the purchaser's] argument is a correct statement of the law is not presently before this court for determination. Under the provisions of the existing orders authorizing the sale of this property the validity of [the] argument will be tested and determined in whatever legal proceedings are instituted by the trustee in seeking a final adjudication of these rights. The present proceedings are merely for the purpose of determining the terms of a prospective sale if the trustee is able to establish the appropriate quality of title.
 
 
 15
 On September 18, 1979, the bankruptcy court entered an order confirming sale of the NW 20 property to Bankers Mortgage Company (Bankers) or its nominee "free and clear of liens and encumbrances." The order makes no adjudication of ownership of the property and refers to no earlier order quieting title to property against the NW 20 purchasers and in the trustee prior to sale.
 
 
 16
 The trustee's deed executed on October 5, 1979, purporting to convey title to the NW 20 property to Andrew and Luetta Cratsenberg and Andrew Cratsenberg as trustee (the Cratsenbergs), pursuant to the authority of the 1975 order and the 1978 amendment, is consistent with the previous orders of the bankruptcy court. It contains no recitation as to the nature of the trustee/grantor's title and contains no explicit warranties as to title.
 
 
 17
 After the completion of sale of the NW 20 property and transfer of custody and possession of the property from the bankruptcy court to the Cratsenbergs, the trustee petitioned the bankruptcy court for an order allowing claims of the NW 20 real estate contract holders "as general unsecured claims against the bankrupt's estate." The trustee did not request any plenary adjudication of title to the NW 20 property.
 
 
 18
 Several persons, alleged members of an "owner's conference," an unincorporated association established under the terms of the NW 20 real estate contracts, appeared specially at the hearing on the trustee's petition, on December 4, 1979. They asserted the "voidness of the sale of the NW 20 real estate by the Bankruptcy Court Trustee for the reason that said real estate was not the property of [Federal Way] at any time after September 9, 1967." Pursuant to a resolution of the owners' conference directing that "every effort" be made to retain "title to our real estate," the persons specially appearing requested the court "to proceed with due notice a proper Clear Title Action to confirm Title in the names of those that have Contracts of Purchase" and asserted that until a determination of title is made, "any consideration of any creditor classification, of NW 20 Co-Owners, as creditor-claimants, is improper, or at least premature."
 
 
 19
 On December 12, 1979, two months after possession of the NW 20 property had passed to the Cratsenbergs, the bankruptcy court issued an order allowing all filed claims of the NW 20 purchasers "as general unsecured claims" and "disregarding" the special appearance of the owners' conference for lack of standing. The conclusions of law entered in support of the order state that "equity and fairness dictate" that the proofs of claim of the NW 20 real estate purchasers "should be allowed as general unsecured claims." Once again, neither the order nor the findings purport to determine who actually had title to the NW 20 property. At that time, because of the prior sale to the Cratsenbergs, the trustee no longer had possession of or any interest in the property, and the bankruptcy court had no power to make orders in respect to it.
 
 
 20
 The sole legal support for the bankruptcy court's conclusion that the claims of all of the NW 20 purchasers were to be allowed as general unsecured claims is the judgment of the district court in Amman v. Cissna, No. 7452 (W.D.Wash. Feb. 2, 1978), an unreported securities fraud class action in which many but not all of the NW 20 purchasers were certified as members of the plaintiff class and in which others specifically opted out. In Amman, the district court dismissed with prejudice the plaintiffs' pendent claim seeking a decree vesting ownership in the NW 20 property in them. The bankruptcy court concluded that all claimants who were members of the Amman class were "bound by the findings and orders ... entered in said case and are barred from asserting any claim of title or ownership in or to the [NW 20] property or to the proceeds of the sale of such property."
 
 
 21
 On March 14, 1980, the representatives of the NW 20 owners' conference filed a complaint in Washington Superior Court against Bankers and the trustee to quiet title to the NW 20 property, for ejectment, and for damages. The Cratsenbergs were added as defendants by subsequent amendment. On December 9, 1980, the trustee was dismissed from the action.
 
 
 22
 Prior to his dismissal from the state court action, the trustee filed a complaint in bankruptcy court for an injunction to enjoin permanently the NW 20 owners' conference from further proceedings arising out of claims to the NW 20 property in any court other than the bankruptcy court. On October 6, 1980, the Cratsenbergs moved to intervene in bankruptcy court to join the trustee's motion to enjoin the owners' conference from seeking to quiet title to the NW 20 property in any court. The bankruptcy court granted the motion to intervene on October 15, 1980, and granted a preliminary injunction on December 16, 1980. The district court affirmed on the grounds that the state court proceeding would impair the bankruptcy court's "ability to function." A subsequent appeal to this court was dismissed as moot, because the bankruptcy court granted a permanent injunction two weeks prior to oral argument. The district court affirmed the order granting the permanent injunction on the basis of "the reasoning and legal conclusions" of the district court opinion in support of the order affirming the grant of preliminary injunction. The owners' conference timely appealed from this ruling.
 
 II
 ISSUE
 
 23
 The sole issue presented by this appeal is whether the Anti-Injunction Act, 28 U.S.C. Sec. 2283 (1976), prohibits the bankruptcy court from issuing an injunction against a state court ejectment and quiet title action concerning real property which is not in the possession of the court and as to which the court never made any adjudication of title. Section 2283 provides:
 
 
 24
 A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.
 
 
 25
 Plaintiffs do not contend that either the Bankruptcy Act or any other statute expressly authorizes an injunction to protect them as purchasers of an asset from the bankrupt estate. See Jacksonville Blow Pipe Co. v. Reconstruction Finance Corp., 244 F.2d 394, 400 n. 7 (5th Cir.1957); 11 U.S.C. Secs. 11(a)(15), 29(a) (1976). They argue, however, that the bankruptcy court nonetheless had power to enjoin the defendants to effectuate its orders or in aid of its jurisdiction. Upon careful consideration of each of these asserted grounds for exception from the general prohibition of federal court injunctions against state judicial proceedings, we conclude that the bankruptcy court and the district court, affirming, were in error and that the order enjoining the NW 20 purchasers must be overturned.
 
 III
 DISCUSSION
 
 26
 A. Jurisdiction to "Protect or Effectuate" Bankruptcy Court Orders.
 
 
 27
 The plaintiffs first seek to ground support for the permanent injunction in the exception provided to a federal court seeking "to protect or effectuate its judgments." The plaintiffs point to two independent sets of court orders whose effectuation allegedly requires an injunction against the state quiet title action: (1) the orders authorizing and confirming sale of the NW 20 property; and (2) the order allowing defendants' claims as general unsecured claims against the Federal Way estate.[5] We conclude that the injunction granted here is not necessary to effectuate or to protect either of these two sets of orders.
 
 
 28
 1. Orders Authorizing Sale.
 
 
 29
 The argument that the injunction is necessary to support the bankruptcy court's orders allowing and confirming sale to Cratsenbergs fails because the court never attempted to quiet title to the NW 20 property against the appellants and in the trustee prior to the sale. The record amply indicates that the orders issued by the bankruptcy court authorizing and confirming the sale of the NW 20 property not only were not intended to determine the actual ownership of the property but also explicitly reserved that determination for other proceedings.
 
 
 30
 The bankruptcy court did, of course, judicially transfer all liens and encumbrances on the property to the sale proceeds. The bankruptcy court made no attempt, however, to quiet title to the property in the trustee prior to the sale, as it had in the other two sales, precisely because of the outstanding claims of ownership asserted by the NW 20 purchasers. Moreover, despite instructions by the court, the trustee never instituted proceedings to determine whether he or the contract holders had title to the property. The deed and order confirming sale did not purport to convey more than the trustee had.
 
 
 31
 Consequently, the injunction against the state court proceedings is entirely unnecessary to protect or effectuate the court's orders, because the orders themselves did not decide the title question. The sort of quiet title action brought by the defendants is precisely the sort of title determination proceeding upon which the court originally conditioned its approval of the sale of the NW 20 property and which the court later waived to enable the trustee to meet the terms of the soon-to-expire earnest money agreement with Bankers. Because the orders permitting sale did not decide the title issue, they do not require an injunction forbidding litigation of that issue for their protection and effectuation. Compare In re Krull, 295 F. 520, 521 (E.D.N.Y.1923) (denying injunction prohibiting third parties from prosecuting any action to oust persons who had purchased leasehold from trustee, on ground that the trustee sold only the "interest of the bankrupts" and "if title of the [purchasers] is attacked in another tribunal, [the] court has no jurisdiction to prevent that tribunal from proceeding to an orderly determination of the rights of the parties") with Riverdale Cotton Mills v. Alabama & Georgia Manufacturing Co., 198 U.S. 188, 195, 25 S.Ct. 629, 632, 49 L.Ed. 1008 (1905) (upholding grant of injunction prohibiting parties to earlier federal foreclosure action from relitigating question of title in state court); and Berman v. Denver Tramway Corp., 197 F.2d 946, 950 (10th Cir.1952) (upholding grant of injunction prohibiting "relitigation in a state court of a matter litigated, determined, and adjudicated" by a valid federal decree).
 
 
 32
 None of the cases cited by plaintiffs gainsay the conclusion we reach. In Local Loan Co. v. Hunt, 292 U.S. 234, 238, 54 S.Ct. 695, 696, 78 L.Ed. 1230 (1934), the Court upheld the "ancillary" jurisdiction of the bankruptcy court to enjoin a state court action to enforce a debt the bankruptcy court had previously discharged. Hunt does not uphold the issuance of an injunction to enforce an order the bankruptcy court did not make.
 
 
 33
 In re Wiltse Bros. Corp., 361 F.2d 295, 299 (6th Cir.1966), is also inapposite. There, the court sustained an order of the bankruptcy court enjoining a purported lienholder from asserting a lien against property previously sold by the trustee "free and clear of liens and encumbrances." The injunction there was necessary to enforce an adjudication the bankruptcy court itself had previously made. See also Clinton v. Shoop, 118 F.2d 811, 814 (8th Cir.1941) (sustaining order enjoining a lienholder from further prosecuting his lien against property in possession of the bankrupts, where the bankruptcy court had previously ruled that the lien was void); In re Clark, 257 F.Supp. 761, 764 (E.D.Va.1966) (sustaining order enjoining prosecution of lien against trustee's purchaser, where sale was free and clear of liens).
 
 
 34
 Plaintiffs also cite Jacksonville Blow Pipe Co. v. Reconstruction Finance Corp., 244 F.2d 394 (5th Cir.1957), in which the court sustained an order enjoining a holder of a "retain title contract" from reclaiming a fan system from the trustee's purchaser. Yet this case lends no support to the plaintiffs' position.
 
 
 35
 In Blow Pipe, prior to the trustee's sale, the bankruptcy court had ordered the trustee either to deliver the fan to the claimant or to pay the claimant $550 in cash, the sum remaining due on the "retain title contract." Id. at 395. The trustee had the option of turning over either the property or the $550 in cash to the seller. That option was inconsistent with any subsequent absolute claim of title to the property the claimant might make. The bankruptcy court in Blow Pipe thus adjudicated the claimant's right to the property prior to sale of the property, quieting title to the fan in the trustee and holding the trustee liable for payment of $550 or the transfer of the property to the claimant. The case is not authority for the proposition that the bankruptcy court can enjoin a state court from trying out title when the bankruptcy court has authorized conveyance of property by the trustee without beforehand making any determination as to who had title.
 
 
 36
 The wide-sweeping proposition that, based on general equitable principles, a federal court can enjoin a state court action on a claim not specifically adjudicated prior to sale, is not consonant with the explicit terms of section 2283 and has been firmly rejected by the Supreme Court, albeit in another context. In Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers, the Court ruled that, despite the obviously strong federal interest in labor relations, the federal courts are prohibited from enjoining state court proceedings unless that action can "be justified by any of the three exceptions." 398 U.S. 281, 286-87, 90 S.Ct. 1739, 1742-43, 26 L.Ed.2d 234 (1970). As the Court explained:
 
 
 37
 In 1955 when this Court interpreted this statute, it stated: "This is not a statute conveying a broad general policy for appropriate ad hoc application. Legislative policy is here expressed in a clear-cut prohibition qualified only by specifically defined exceptions." Amalgamated Clothing Workers v. Richman Bros., 348 U.S. 511, 515-16 [75 S.Ct. 452, 455-56, 99 L.Ed. 600] (1955). Since that time Congress has not seen fit to amend the statute and we therefore adhere to that position and hold that any injunction against state court proceedings otherwise proper under general equitable principles must be based on one of the specific statutory exceptions to Sec. 2283 if it is to be upheld. Moreover since the statutory prohibition against such injunctions in part rests on the fundamental constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction. Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court.
 
 
 38
 Id. at 287, 90 S.Ct. at 1743 (emphasis added). See Bill Johnson's Restaurants, Inc. v. NLRB, --- U.S. ----, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983) (NLRB has no power to enjoin employer from prosecuting in state court a state claim unless it is patently frivolous, even if suit was filed in retaliation against employee's protected rights).
 
 
 39
 For these reasons, we conclude that the issuance of the injunction cannot be sustained as necessary to protect or effectuate the bankruptcy court's orders of sale.
 
 
 40
 2. Order Classifying Claims.
 
 
 41
 Nor is any injunction against the state court action necessary to effectuate or protect the bankruptcy court's order allowing the claims of the NW 20 real estate contract holders as "unsecured" claims. Once the trustee sold the property to the Cratsenbergs, the bankruptcy court lost jurisdiction to determine claims of title to that property.
 
 
 42
 As long as property is in the actual or constructive possession of the court, under the Bankruptcy Act, the bankruptcy court has summary jurisdiction to determine claims of title to that property. See Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 481-82, 60 S.Ct. 628, 629-30, 84 L.Ed. 876 (1940). However, where property is outside the possession of the bankruptcy court and is held adversely to the trustee, the court, absent consent, has no jurisdiction to adjudicate conflicting claims of title to the property, even where one of the claims is asserted by the trustee himself.[6] Cline v. Kaplan, 323 U.S. 97, 98-100, 65 S.Ct. 155, 156-157, 89 L.Ed. 97 (1944) (bankruptcy court has no summary jurisdiction to adjudicate trustee's claim of title to property in possession of third party); Coffman v. Cobra Manufacturing Co., 214 F.2d 489, 491 (9th Cir.1954), cert. denied, 348 U.S. 912, 75 S.Ct. 291, 99 L.Ed. 715 (1955); Wight v. Street, 63 F.2d 80, 81 (9th Cir.1933). Consequently, where property is outside of the court's possession and the trustee claims no interest in the property whatsoever, the bankruptcy court is equally devoid of jurisdiction to adjudicate conflicting claims of ownership of the property.
 
 
 43
 In this case, from the date of sale onward, the bankruptcy court had no jurisdiction over a title dispute concerning the NW 20 property. At the time the state court action was commenced, the bankruptcy court had neither actual nor constructive possession of the property since actual possession was in the Cratsenbergs and the trustee laid no claim to the property.[7] Any determination the bankruptcy court may have made in respect to the claims of NW 20 purchasers after the trustee sold the NW 20 property could affect only the relationship of the purchasers vis a vis other claimants as their claims related to assets still in the estate. Consequently, no injunction is necessary to prevent the assertion in state court of claims of title to the NW 20 property, because the order of the bankruptcy court allowing the claims as unsecured claims itself did not and could not decide the issue concerning title to the property.[8]
 
 
 44
 To support their contention that the court retained jurisdiction to determine title, the appellees cite only Clinton v. Shoop, 118 F.2d 811 (8th Cir.1941). In that case, the federal court upheld an order setting aside a state court judgment that foreclosed certain liens against property of the bankrupt, where the bankruptcy court had previously determined that the claims upon which the liens were based were "unsecured" and that the liens themselves were "void." Id. at 814.
 
 
 45
 Clinton, in fact, lends support to our analysis. First, the property upon which the liens were asserted in Clinton was an asset of the bankrupt's estate at the time of the state court action. Id. at 813. More importantly, the bankruptcy court had specifically declared each of the liens to be void. This ruling was made while the property was in the court's jurisdiction. Id. at 814. Here, by contrast, at the time the claims of the NW purchasers were "allowed" as unsecured claims, the trustee in bankruptcy had completely divested himself of the property by order of the court and thus the property was no longer within the court's jurisdiction.[9]
 
 
 46
 That some of the NW 20 purchasers had filed claims against the Federal Way estate in 1967, asserting claims against the bankrupt in the event ownership of the NW 20 property were not adjudicated to be in the purchasers, did not preserve the bankruptcy court's jurisdiction. When the claims were filed, consent to the court's jurisdiction to determine title to the property was unnecessary, since the property was an asset of the estate. Once the property had been sold, however, the owners' conference, on behalf of all NW 20 purchasers, promptly objected to the court's continued assertion of jurisdiction. The objection was a proper one and negatived consent. The bankruptcy court thenceforth had "no right to proceed summarily." See Cline v. Kaplan, 323 U.S. 97, 99, 65 S.Ct. 155, 156, 89 L.Ed. 97 (1944).[10] We conclude that under these facts the 1967 filing of claims did not confer jurisdiction on the bankruptcy court to decide the question of title to the NW 20 property once the trustee's interest in the property was conveyed away.[11]
 
 
 47
 B. Jurisdiction "Necessary to or in Aid of" Bankruptcy Jurisdiction.
 
 
 48
 The plaintiffs further argue that, even if the injunction was not necessary to protect or effectuate prior orders, the injunction was "necessary to or in aid of its jurisdiction." The two central prongs of this argument are (1) that the state court action "would interfere with the court's ability to determine outstanding allowable claims and to equitably distribute the estate assets accordingly" and (2) that the state court action might subject the trustee to certain liabilities.[12] Neither argument supports the issuance of an injunction in this case.
 
 
 49
 As a preliminary matter, we must stress that neither plaintiffs nor the bankruptcy court cite any case authority for using the "in aid of jurisdiction" exception to section 2283 solely to streamline administration of the bankrupt estate. Indeed, the "in aid of jurisdiction" presumes jurisdiction and has been used only where the state court action attempts to affect rights in property that is in the custody and possession of the federal court. See In re Abraham, 421 F.2d 226, 228 (5th Cir.1970); 17 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure Sec. 4225, at 333-34 (1978) (collecting cases).
 
 
 50
 1. Necessity in Order to Administer Estate.
 
 
 51
 We refuse to adopt the position, urged upon us by the appellees, that an injunction should issue simply because the state court action might affect the allocation of assets among claimants in the bankruptcy.
 
 
 52
 In In re Richmond, 456 F.2d 458, 464 (3d Cir.1972), the Third Circuit confronted a similar argument and explicitly rejected the contention that the bankruptcy court had jurisdiction over a dispute between a creditor of the bankrupt and a third party because resolution of the dispute with the third party could alter the size of the creditor's claim against the estate. Discounting over-broad language in O'Dell v. United States, 326 F.2d 451, 456 (10th Cir.1964), the Richmond court stated:
 
 
 53
 [W]e do not choose to follow the O'Dell decision insofar as it affords the bankruptcy court jurisdiction to determine a third party dispute when the only connection between the dispute and the bankruptcy proceeding is that the outcome of the third party controversy will in some way affect the liability of the bankrupt or debtor. Obviously the extent to which a debt is satisfied by a co-debtor of the bankrupt will affect the extent to which the bankrupt estate will be called upon to satisfy the debt, but this is not sufficient reason to give the bankruptcy court jurisdiction to determine the co-debtor's liability.
 
 
 54
 See 456 F.2d at 463-64.
 
 
 55
 We think that Richmond was soundly decided. Indeed, we have espoused a preference for just such a rule in another bankruptcy context. In In re Kirchoff Frozen Foods, Inc., 496 F.2d 84, 86 (9th Cir.1974), we held that the bankruptcy court had no jurisdiction to determine the claims of title of certain third parties to certain property held adversely to the trustee simply because resolution of those ownership claims would affect the rights of the third parties "to recovery against the estate as creditors." See also Evarts v. Eloy Gin Corp., 204 F.2d 712, 717 (9th Cir.) (creditor of bankrupt is "subject to the Bankruptcy Court's jurisdiction in his dealings with the debtors," but not "in his dealings with third parties"), cert. denied, 346 U.S. 876, 74 S.Ct. 129, 98 L.Ed. 384 (1953).
 
 
 56
 It is but a natural application of the jurisdictional rule set forth in Richmond and Kirchoff to the facts before us to state that, absent consent, the bankruptcy court would itself have no jurisdiction over the title dispute between the Cratsenbergs and the NW 20 purchasers simply because its outcome might affect the payment of claims from the Federal Way estate. That being the case, we fail to see how an injunction prohibiting the litigation of the title dispute in state court would in any way be "necessary" in aid of the court's lawful jurisdiction.
 
 
 57
 The short answer to the Cratsenbergs' contention that the injunction must be granted to permit the trustee to finish expeditiously the administration of the estate is that the trustee, having declined to settle the title issue before transferring the property to Cratsenbergs, must now await the conclusion of the state court quiet title action. Haste in sale (or unexplained delay in quieting title in the bankruptcy proceeding) should not deprive the NW 20 purchasers of their day in court.
 
 
 58
 2. Necessity in Order to Avoid Trustee Liability.
 
 
 59
 The argument that an injunction should issue to prevent the possible liability of the trustee to the Cratsenbergs because the trustee's sale is void or to the NW 20 purchasers based on an accounting for profits earned while the property was in the trustee's possession is without merit. First, no case authority is cited to support the issuance of an injunction against a state court action simply to protect the trustee from personal liability. Moreover, regardless of whether the bankruptcy court could enjoin a state court action brought directly against the trustee, the state court action in its present posture involves neither the debtor nor the trustee nor the bankruptcy court. The possible future effects of that litigation on the trustee or on the estate are purely speculative.[13]
 
 
 60
 The only reported case to address this issue strongly supports our conclusion. In In re Krull, 295 F. 520 (E.D.N.Y.1923), the trustee's purchaser sought to enjoin a third party from seeking the purchaser's ejectment in a state court action. The court rejected the contention that the federal court could enjoin the state court proceeding to protect the trustee from liability:
 
 
 61
 The trustee in bankruptcy has appeared, and states that, if the assignment of the lease is invalid, he will be called upon to return the moneys received as a result of the sale of the assets. It is not clear to the court why such a result follows, if there was indeed a sale of all the trustee's right, title, and interest; but, even if this be true, it cannot give the court the right to assert a power which it lacks.
 
 
 62
 Id. at 521.
 
 IV
 CONCLUSION
 
 63
 We reverse the judgment of the district court affirming the bankruptcy court's issuance of an injunction against the NW 20 purchasers on the ground that the injunction does not fall within any of the exceptions to the general prohibition against injunctions of state court proceedings. See 28 U.S.C. Sec. 2283. We hold that under the facts of this case the bankruptcy court had no power to prevent the state court from moving forward with the real property dispute before it.
 
 
 64
 REVERSED.
 
 
 
 *
 The Honorable Fred M. Taylor, Senior United States District Judge for the District of Idaho, sitting by designation
 
 
 [1]
 This case is governed by the Bankruptcy Act of 1898 (the "Bankruptcy Act"), ch. 541, 30 Stat. 544 (codified as amended at 11 U.S.C. Secs. 1-1103 (1976)). Although the Act was repealed by the Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, 92 Stat. 2549 (codified at 11 U.S.C. Secs. 101-1330 (Supp. V. 1981)), the Act remains applicable to this case because the petition was filed prior to October 1, 1979, see Pub.L. No. 95-598, title IV, Sec. 402(a), 92 Stat. 2682 (1978)
 
 
 [2]
 In the same petition, the trustee made a similar recommendation with regard to claims based on similar real estate contracts concerning the sale of other property. The Ninth Circuit has held that, under the circumstances surrounding the contracts utilized in the sale of that property, the contract holders possessed, under Washington law, not just an investment claim, but an interest in real property. See Owners of "SW 8" Real Estate v. McQuaid, 513 F.2d 558, 562 (9th Cir.1975)
 
 
 [3]
 The findings entered in support of the order of April 18, 1975, make no reference to quieting title to the NW 20 property in the trustee, as contrasted to the other two orders, because the parties expected the ownership of the NW 20 property to be determined in other proceedings:
 By virtue of the pleadings ... any questions relating to title or ownership of the property ... have been withdrawn from consideration by the Court. The Court is only asked to approve the term of the sale, and authorize the sale free and clear of liens with the liens being transferred to the proceeds, subject to the condition that the Trustee is successful in establishing ownership in a separate proceeding.
 
 
 [4]
 The finding states in pertinent part:
 The trustee should have wide discretion in determining the type or types of legal proceedings that would be useful or necessary in attempting to reach a final judicial determination of the status of title that he can convey to the purchaser. It is recognized that a court may ultimately determine that the trustee does not have and hence cannot convey the quality of title which the purchaser is entitled to receive under the terms of the applicable earnest money agreements. It is also recognized that there may be more than one type of legal proceeding that will be either useful or essential to resolving the questions of title. The trustee should be authorized and directed to proceed as expeditiously as possible to determine the type or types of legal proceedings which may be necessary to institute and to pursue them as vigorously as possible. The trustee should also clearly have the authority to consummate the sale without the final resolution through legal proceedings of questions of title in the event that the purchaser should be willing to accept such quality of title as the trustee is able to give. [emphasis added].
 
 
 [5]
 The Cratsenbergs do not argue that the bankruptcy court had power to issue an injunction to effectuate the order of dismissal of the district court in Amman v. Cissna, presumably because that order was not an order of the bankruptcy court
 Nor do they assert, except in passing, that the court had power to enjoin the state court action to protect the district court's order of 1970, prescribing a procedure for allowance and disallowance of claims. That order did state that "[e]very claim recommended by the trustee for allowance shall be deemed allowed unless an objection thereto is filed." However, the failure of the NW 20 purchasers to object to the trustee's recommendation of March 31, 1971--that their claims to the property be allowed as general unsecured claims on the ground that the NW 20 real estate contracts did not create property interests--did not, by virtue of the bankruptcy court's previous order, convert the trustee's recommendation into an adjudication of title by the bankruptcy court. Because the recommendation itself was explicitly made conditional on a prior finding by the court that the NW 20 real estate contracts created no property interest in the NW 20 property and because no such finding was ever made while the property was in the bankruptcy court's possession, the 1970 order, taken together with the trustee's recommendation, does not constitute an adjudication of title and therefore does not require any injunction for its protection.
 
 
 [6]
 In such situations, the third party "claimant has the right to have the merits of his claim passed on in a plenary suit" in a court that independently has in rem jurisdiction over the subject matter. Cline, 323 U.S. at 99, 65 S.Ct. at 156. Thus, under the Bankruptcy Act, even where the trustee claims an interest in the res, a separate, plenary action "in any court of proper jurisdiction" is the only means of adjudicating title to the property. See, e.g., Harrison v. Chamberlin, 271 U.S. 191, 193, 46 S.Ct. 467, 468, 70 L.Ed. 897 (1926) (collecting cases)
 
 
 [7]
 The bankruptcy court can exercise summary jurisdiction over property that is held adversely to the bankrupt estate and is outside the court's actual possession if and only if the claim of the party possessing the property is "frivolous." See, e.g., Mueller v. Nugent, 184 U.S. 1, 15, 22 S.Ct. 269, 275, 46 L.Ed. 405 (1902). This exception is inapplicable here, however, both because the claims of the NW 20 purchasers cannot be considered "frivolous," see Harrison v. Chamberlin, 271 U.S. 191, 195, 46 S.Ct. 467, 469, 70 L.Ed. 897 (1926) (claim is "frivolous" only if "it is so unsubstantial and obviously insufficient ... as to be plainly without color of merit, and a mere pretense"), and because after the sale the NW 20 property was not "held adversely to the bankrupt estate," see id. at 193, 46 S.Ct. at 468
 
 
 [8]
 Persuasive indication that the allowance of the claims of the NW 20 purchasers as unsecured claims was not intended to adjudicate title to the property is that the Cratsenbergs were never joined in any such "allowance" proceeding, even though the Cratsenbergs, as persons in possession of the NW 20 property, would surely be indispensable parties to any proceeding determining title to the NW 20 property
 
 
 [9]
 The case before us also differs from Rosehedge Corp. v. Sterett, 274 F.2d 786, 788 (9th Cir.1960), in which we upheld the bankruptcy court's power to determine whether the prior sale of assets of the bankrupt had extinguished a purported lien on the assets. In that case, the bankruptcy's order entered after the property left the court's possession merely clarified a judgment concededly made while the property was within the court's possession. Here, by contrast, any determination of title to the property by the bankruptcy court after the 1979 sale of the NW 20 property would not have been an attempt to "constru[e]" or "clarif[y]" earlier proceedings, see id., but a new effort to decide a matter the court explicitly chose not to adjudicate while the property was in its possession
 
 
 [10]
 Even if they had not objected, however, the mere filing of a claim as creditor against a bankrupt estate on one legal basis would not, by itself, necessarily constitute consent to the bankruptcy court's summary jurisdiction to determine questions of title to property. See In re Kirchoff Frozen Foods, Inc., 496 F.2d 84, 86 (9th Cir.1974) (person's filing of claim as creditor asserting indebtedness of bankrupt in event person's claim of "right to retain the funds [was] resolved adversely" does not constitute "consent" to bankruptcy court's "summary jurisdiction over issues respecting ... right to retain the funds"); see also In re Kirchoff Frozen Foods, Inc., 496 F.2d 84, 86 (9th Cir.1974); Pickens v. Roy, 187 U.S. 177, 180, 23 S.Ct. 78, 79, 47 L.Ed. 128 (1902); In re Eakin, 154 F.2d 717, 719 (2d Cir.1946)
 
 
 [11]
 Even if the bankruptcy court's order allowing filed claims as unsecured claims had decided the title issue as to the purchasers whose claims were allowed, an injunction would be improper. Not all of the NW 20 purchasers filed claims against the Federal Way estate, and the bankruptcy court never sought to quiet title against all purchasers individually or as a class. Those purchasers who had not filed claims would be free to sue for ejectment in state court, since the order allowing filed claims as unsecured claims certainly could not have decided anything as to them
 
 
 [12]
 The district court also sought to sustain the injunction on the ground that, if the NW 20 purchasers were to prevail in state court, the trustee would be compelled to seek recovery against the NW purchasers for funds expended by the trustee in the course of administering the property. The Cratsenbergs do not argue this ground on appeal. For our part, we see no reason why the possibility of such a recovery by the trustee would support the issuance of an injunction under Sec. 2283
 
 
 [13]
 In any event, it is doubtful that the estate will be diminished by the claims of the Cratsenbergs if the NW 20 real estate contract holders prevail in the state court action. To the extent the NW 20 purchasers prevail, the amount of general unsecured claims against the estate would, of course, be reduced. Also, if it is determined that the property was sold without warranties as to title, the Cratsenbergs may have no action against the trustee. Unlike the trustee in the case cited by plaintiffs, see In re Gravure Paper & Board Corp., 234 F.2d 928 (3d Cir.1956), no one here seriously contends that the trustee is "solely and independently responsible" for any loss of the estate's title to the property. If as appellants contend, they (and not Federal Way) in fact owned the NW 20 property on date of filing, nothing the trustee did or failed to do caused the bankrupt estate to "lose" title. Moreover, the trustee appears to have misled no one because he appears to have conveyed only the "quality of title" he received on date of filing and to have warranted nothing more. We have pointed out in a similar case:
 The trustee could only sell and convey such right, title and interest as he owned. A sale by a trustee in bankruptcy is a judicial sale.... The purchaser is bound to know that the only title which can be sold by the trustee in his own right, title and interest, and the doctrine of caveat emptor, applicable generally to judicial sales, applies to a sale under order of a bankruptcy court.
 Hagan v. Gardner, 283 F.2d 643, 646 (9th Cir.1960).